IN THE UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

```
---------------------------------------------------------x
                                                         :
In re:                                                   :   Chapter 11
                                                         :
DIRECTBUY HOLDINGS, INC., et al.,¹                       :   Case No. 16-12435 (CSS)
                                                         :
                    Debtors.                             :   Jointly Administered
                                                         :   Related to Docket No. 13 and 45
                                                         :
---------------------------------------------------------x
```

### INTERIM ORDER (I) AUTHORIZING USE OF CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION TO SECURED PARTIES, (III) SCHEDULING A FINAL HEARING, AND (IV) GRANTING RELATED RELIEF

Upon the motion, dated November 1, 2016 (Docket No. 13) (the "**Motion**"),² of

DirectBuy Holdings, Inc. ("**Holdings**") and its affiliated debtors, as debtors and debtors in

possession (collectively, the "**Debtors**"), for the entry of an interim order (the "**Interim Order**")

and a final order (the "**Final Order**") under sections 105, 361, 362, 363, and 507 of title 11 of

the United States Code (as amended, the "**Bankruptcy Code**"), Rules 2002, 4001, and 9014 of

the Federal Rules of Bankruptcy Procedure (as amended, the "**Bankruptcy Rules**"), and the

Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the

District of Delaware (the "**Local Rules**"), seeking:

(a)     authorization for the Debtors to use "**Cash Collateral**," as defined below,

subject to and pursuant to the terms and conditions set forth in this Interim Order;

---

¹ The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number are: DirectBuy Holdings, Inc. (3621); United Consumers Club, Incorporated ("**UCC**") (6335); DirectBuy, Inc. (5059); Beta Finance Company, Inc. (8776); UCC Distribution, Inc. (6010); U.C.C. Trading Corporation (4388); National Management Corporation (8765); and UCC of Canada, Inc. (6435).  The address of the Debtors' corporate headquarters is 8450 Broadway, Merrillville, IN 46410.

² Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

(b)      authorization for the Debtors, pursuant to Sections 105, 361, 362, 363, and 507 of the Bankruptcy Code, to provide adequate protection on the terms set forth in this Interim Order to the following parties (collectively, the **"Prepetition Secured Parties"**) on account of the Debtors' use of the Cash Collateral (as defined below) and any diminution in value of the Prepetition Secured Parties' respective interests in the Prepetition Collateral:

i.      U.S. Bank National Association, as (a) trustee under that certain Senior Secured Toggle Notes Indenture (as amended, restated, supplemented, or otherwise modified, the **"Prepetition Notes Indenture"**), dated as of November 5, 2012, with Holdings, as issuer, and each of the additional Debtors in these chapter 11 cases (the **"Chapter 11 Cases"**) as guarantors (the **"Guarantors"**) and (b) collateral agent (the **"Prepetition Collateral Agent"**) under that certain Security Agreement, dated as of November 5, 2012, with Holdings and each of the Debtors as grantors party thereto (the **"Prepetition Security Agreement"** and, together with the Prepetition Notes Indenture, the **"Prepetition Notes Documents"**); and

ii.      the holders (the **"Prepetition Noteholders"**) of the 12% Senior Secured Toggle Notes due 2019 issued pursuant to the Prepetition Notes Indenture (the **"Prepetition Notes"**).

(c)      vacating and modifying the automatic stay imposed under section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of this Interim Order;

(d)      scheduling a final hearing (the **"Final Hearing"**) to consider entry of a Final Order granting the relief requested in the Motion on a final basis, and to approve the form and manner of notice with respect to the Final Hearing; and

WEIL:\95923767\2\22541.0004

(e)    waiving any applicable stay as provided in the Bankruptcy Rules and/or Local Rules, and providing for the immediate effectiveness of this Interim Order.

Notice of the interim hearing on the Motion (the "**Interim Hearing**") having been given in the manner set forth in the Motion; and the Interim Hearing having been held by this Court on November 3, 2016; and upon the record made by the Debtors at the Interim Hearing; and upon the Declaration of Michael P. Bornhorst In Support of the Debtors' Chapter 11 Petitions and First Day Relief; and this Court having heard and resolved or overruled all objections, if any, to the relief requested in the Motion; and it appearing that the interim relief requested in the Motion is in the best interests of the Debtors, their estates, and creditors; and after due deliberation and consideration and sufficient cause appearing therefor; and for the reasons stated at the Interim Hearing,

**IT IS HEREBY FOUND AND CONCLUDED AS FOLLOWS:[3]**

A.    <u>Petition Date</u>.  On November 1, 2016 (the "**Petition Date**"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in this Court.  The Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b).  The Debtors are continuing in the management and operation of their business and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner or official committee of unsecured creditors (a "**Committee**") has been appointed in these Chapter 11 Cases.

---

[3] The findings and conclusions set forth in this Interim Order constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

3

B.    <u>Jurisdiction and Venue</u>.    This Court has jurisdiction over these proceedings pursuant to 28 U.S.C. §§ 157(b) and 1334, and the Amended Standing Order of Reference from the United States District Court for the District of Delaware dated February 29, 2012. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

C.    <u>Sale Motion</u>.    On the Petition Date, the Debtors filed a motion to approve the sale of all or substantially all of the Debtors' business assets pursuant to that certain Asset Purchase Agreement (the "**Purchase Agreement**"), dated as of November 1, 2016, by and among the Debtors and the Buyer (as defined in the Purchase Agreement).

D.    <u>Notice</u>.    Notice of the Motion, the relief requested therein and the Interim Hearing was served on all parties-in-interest identified in the Affidavit of Service at Docket No. 28. The notice given by the Debtors of the Motion and the Interim Hearing complies with Bankruptcy Rules 2002, 4001(b) and (d), the Local Rules, and no further notice of the relief sought at the Interim Hearing is necessary or required.

E.    <u>**Debtors' Stipulations**</u>.    The Debtors admit, acknowledge, agree, and stipulate to the following:

1.    <u>Description of Prepetition Secured Obligations</u>.    As of the Petition Date, the Debtors were indebted and liable to the Prepetition Secured Parties, without defense, counterclaim or offset of any kind, in the aggregate amount of not less than (i) $100,000,000 of outstanding principal, plus (ii) accrued and unpaid interest with respect thereto, indemnification obligations, fees, costs, and expenses (collectively, the "**Prepetition Secured Obligations**"); the Prepetition Secured Obligations are unconditionally and irrevocably guaranteed by the Guarantors pursuant to the Prepetition Security Agreement.

2.    <u>Validity of Prepetition Secured Obligations</u>.    The Prepetition Secured Obligations constitute legal, valid, and binding obligations of the Debtors, enforceable in accordance with their terms (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code) against each of the Debtors.  No portion of the Prepetition Secured Obligations and no amount paid at any time to the Prepetition Secured Parties in respect of the Prepetition Notes Documents and the transactions contemplated thereby is subject to contest, attack, objection, recoupment, defense, setoff, counterclaim, avoidance, recharacterization, reclassification, reduction, disallowance, recovery or subordination or other challenge pursuant to the Bankruptcy Code or applicable non-bankruptcy law, and the Debtors do not have any claims, counterclaims, causes of action, defenses or setoff rights related to the Prepetition Secured Obligations or the Prepetition Notes Documents, whether arising on or prior to the date hereof, under the Bankruptcy Code or applicable nonbankruptcy law against the Prepetition Collateral Agent, the Prepetition Noteholders, and their respective affiliates, subsidiaries, agents, officers, directors, employees, attorneys and advisors.

3.    <u>Description of Prepetition Liens and Prepetition Collateral</u>.  Pursuant to and as more particularly described in the Prepetition Security Agreement, the Prepetition Secured Obligations are secured by valid, binding, perfected, enforceable liens or mortgages on, security interests in, and assignments or pledges of, substantially all of the assets of the Debtors (the "**Prepetition Liens**"), including, without limitation, all of such Debtors' cash (1) constituting proceeds or products of Prepetition Collateral (as defined and described in the Motion) or (2) subject to the Prepetition Secured Parties' rights of setoff, if any, collectively, constituting cash collateral, as that term is defined in section 363 of the Bankruptcy Code (the "**Cash Collateral**"), and any cash that does not constitute Prepetition Collateral, proceeds or

5

products of Prepetition Collateral or is not subject to such rights of setoff is not Cash Collateral. At the time the Debtors entered into the Prepetition Notes Documents, the Prepetition Liens were third priority liens junior to then existing senior secured credit facilities (the "**Senior Debt Facilities**"). Prior to the Petition Date, the Debtors repaid in full the Senior Debt Facilities, and the liens and security interests granted in connection with the Senior Debt Facilities were released.

               4.      <u>Validity and Perfection of Prepetition Liens</u>.  The Prepetition Liens are valid, binding, perfected, enforceable, first priority liens on and security interests in (subject to liens permitted under the Prepetition Notes Documents) the applicable Prepetition Collateral and are not subject to avoidance, objection, defense, contest, recharacterization, reclassification, reduction, subordination or any other challenge of any kind pursuant to the Bankruptcy Code or applicable nonbankruptcy law by any person or entity and, subject to the provisions of paragraph 6 of this Interim Order, each Debtor irrevocably waives, for itself and its estate, any right to challenge or contest in any way the scope, extent, perfection, priority, validity, non-avoidability, and enforceability of the Prepetition Liens or the validity, enforceability, or priority of payment of the Prepetition Secured Obligations and the Prepetition Note Documents.  The Prepetition Liens were granted to the respective Prepetition Secured Parties for fair consideration and reasonably equivalent value, and were granted contemporaneously with the making of loans, commitments, and/or other financial accommodations under the Prepetition Loan Documents.

               5.      <u>Interest in Cash Collateral</u>.  The Prepetition Secured Parties have a valid security interest in Cash Collateral and all proceeds or products of Prepetition Collateral (but only to the extent of the Prepetition Secured Parties' respective security interests in such

WEIL:\95923767\2\22541.0004

Prepetition Collateral) to secure their respective prepetition claims, to the same extent and order of priority as that which was held by each such party on the Petition Date.

      F.     <u>Debtors' Need to Use Collateral</u>. The Debtors require access to the Prepetition Collateral (including Cash Collateral) on the terms set forth herein (including in the amount and in the manner set forth in the Approved Budget) to permit, among other things, the satisfaction of the costs and expenses of operating their business and administering these Chapter 11 Cases. The terms of the use of the Prepetition Collateral (including the Cash Collateral) pursuant to this Interim Order are fair and reasonable, reflect the Debtors' exercise of prudent business judgment, and constitute reasonably equivalent value and fair consideration.

      G.     <u>Use of Cash Collateral</u>. Immediately following the signing of this Interim Order and until entry of the Final Order, the Debtors shall use the Cash Collateral in accordance with this Interim Order solely to fund (a) postpetition operating expenses of the Debtors (including the Canadian Subsidiaries) incurred in the ordinary course of business, (b) costs and expenses of administration in accordance with the Approved Budget and as provided in this Interim Order, including payment of any prepetition obligations that have been approved by this Court by separate order, and (c) other general corporate purposes of the Debtors and the Canadian Subsidiaries, and in the case of each of the foregoing clauses (a), (b), and (c), in accordance with the amounts and categories set forth in the 13-week cash flow forecast attached hereto as **Exhibit 1** and incorporated by reference herein (as may be revised from time to time with the prior written consent of the Prepetition Noteholders, the "**Approved Budget**"), or as otherwise consented to by the Prepetition Noteholders. The Debtors shall file any revised Approved Budget and serve the same on the U.S. Trustee and any official committee appointed in these cases no later than three (3) business days after any revision.

WEIL:\95923767\2\22541.0004

H.    **Adequate Protection**.  The adequate protection provided to the Prepetition Secured Parties, as set forth in this Interim Order, for any diminution in the value of the Prepetition Secured Parties' interests in the Prepetition Collateral from and after the Petition Date resulting from the subordination to the Carve-Out, the imposition of the automatic stay pursuant to section 362(a) of the Bankruptcy Code, the use, sale, or lease of the Prepetition Collateral (including any Cash Collateral) under section 363 of the Bankruptcy Code ("**Diminution in Value**"), is consistent with, and authorized by, the Bankruptcy Code and is offered by the Debtors to protect such parties' interests in the Prepetition Collateral in accordance with sections 361, 362, and 363 of the Bankruptcy Code.  The adequate protection provided herein and other benefits and privileges contained herein are necessary in order to protect the Prepetition Secured Parties from any diminution of their respective interests in the value of their Prepetition Collateral.  All Adequate Protection Liens granted in this Interim Order are subject to being set aside, and all Adequate Protection Claims granted in this Interim Order are subject to being disallowed, and all Adequate Protection payments authorized in this Interim Order are subject to disgorgement, if and to the extent that the underlying Pre-Petition Lien or Claim is the subject of a Successful Challenge pursuant to paragraph 6 of this Interim Order.

I.    Good Cause Shown; Best Interest.  The Debtors have requested immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(b)(2) and Local Rule 4001-2. Absent entry of this Interim Order, the Debtors' businesses, properties, and estates will be immediately and irreparably harmed.  This Court concludes that good cause has been shown and entry of this Interim Order is in the best interests of the Debtors' respective estates and creditors as its implementation will, among other things, allow for the continued and uninterrupted

8

operation of the Debtors' and their Canadian Subsidiaries' existing businesses and the possibility for a successful going concern sale of the Debtors' business assets.

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

1.      **Approval of Interim Order.**  The Motion is approved on the terms and conditions set forth in this Interim Order.  Any objections that have not previously been withdrawn are hereby overruled.  This Interim Order shall become effective immediately upon its entry.

2.      **Authorization to Use Cash Collateral.**  Pursuant to this Interim Order, the Debtors are authorized to use Cash Collateral on an interim basis for:  (i) working capital purposes; (ii) other general corporate purposes of the Debtors and the Canadian Subsidiaries; and (iii) the satisfaction of the costs and expenses of administering the Chapter 11 Cases in accordance with the Approved Budget (subject to the Permitted Variances (as defined below)).

3.      **Prepetition Secured Parties' Adequate Protection.**  The Prepetition Secured Parties are entitled pursuant to sections 361 and 363(c) of the Bankruptcy Code to adequate protection of their interests in the Prepetition Collateral (including Cash Collateral) for any Diminution in Value of the Prepetition Secured Parties' interests in the Prepetition Collateral from and after the Petition Date.  The Prepetition Collateral Agent, for the benefit of the Prepetition Secured Parties, is hereby granted, to the extent of any Diminution in Value of their interests in the Prepetition Collateral from and after the Petition Date, the following:

a.      **Superpriority Claims.**  To the extent set forth below, allowed superpriority administrative expense claims pursuant to sections 503(b), 507(a), and 507(b) of the Bankruptcy Code (the "**Superpriority Claims**").  Any Superpriority Claims shall be subject to the Carve-Out, and shall be allowed claims against the applicable Debtors with priority over

9

any and all administrative expenses and all other claims against such Debtors now existing or hereafter arising, of any kind whatsoever, including, without limitation, all other administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all other administrative expenses or other claims arising under any other provision of the Bankruptcy Code, including, without limitation, sections 105, 326, 327, 328, 330, 331, 503(b), 507(a), 507(b), or 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other nonconsensual lien, levy, or attachment. Other than the Carve-Out, no cost or expense of administration under sections 105, 503, or 507 of the Bankruptcy Code or otherwise, shall be senior to, or *pari passu* with, the Superpriority Claims.

b.    <u>Adequate Protection Liens.</u>    Pursuant to sections 361(2) and 363(c)(2) of the Bankruptcy Code, valid, binding, continuing, enforceable, fully-perfected, non-voidable replacement liens on and security interests in (the "**Adequate Protection Liens**") all currently owned and hereafter acquired property and assets of the Debtors, whether real or personal, tangible or intangible, and wherever located, and all proceeds, products, offspring, rents, proceeds of interests in leaseholds and profits thereof, and including, without limitation, all Prepetition Collateral and the proceeds thereof (all collateral described in this paragraph 4(b), collectively, the "**Collateral**"), subject only to (i) existing valid, perfected, and superior liens in the Collateral, (ii) any valid, perfected, unavoidable liens on or security interests in existence as of the Petition Date, or that are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code, and (iii) the Carve-Out; <u>provided</u> that the Collateral shall not include any actions under sections 544, 545, 547, 548, and 550 of the Bankruptcy Code (collectively, the "**Avoidance Actions**") but shall include, subject only to and effective upon

10

entry of the Final Order, the proceeds or property recovered from successful Avoidance Actions, whether by judgment, settlement or otherwise.

        c.    **Fees and Expenses**.  Fourteen (14) days following receipt by the Debtors of invoices therefor, the Debtors shall promptly pay, without further order of, or application to, the Court all outstanding prepetition and postpetition reasonable and documented fees and expenses incurred by (a) Dorsey & Whitney LLP, as counsel to the Prepetition Collateral Agent, (b) Weil, Gotshal & Manges LLP, as counsel to the ad hoc group of Prepetition Noteholders, and (c) Pepper Hamilton LLP, as co-counsel to the ad hoc group of Prepetition Noteholders; provided, however, that, in the event this Court determines that the Prepetition Secured Parties are not entitled to such payment of fees as adequate protection for the Diminution in the Value of the Prepetition Secured Parties' interests in the Prepetition Collateral, any such payments shall be applied as a payment made to the principal amount of the Prepetition Notes.  None of the fees, costs, expenses or other amounts payable pursuant to this paragraph 3(c) shall be subject to separate approval by this Court (but this Court shall resolve any dispute as to the reasonableness of any such fees, costs, and expenses or as to the propriety of any redactions of billing descriptions contained in applicable invoices), and no recipient of any such payment shall be required to file any interim or final fee application with respect thereto; provided, however, that Dorsey & Whitney LLP, Weil, Gotshal & Manges LLP and Pepper Hamilton LLP shall submit copies of any such invoices, which may be redacted to protect privileged, confidential, or proprietary information, to the U.S. Trustee and counsel to the Committee (if any), and the Debtors, the U.S. Trustee, and the Committee shall have fourteen (14) days following their receipt of such invoices to object to the reasonableness of the fees and expenses included in any such invoice, or to the propriety of any redactions.  If any such

11

objection is not resolved within ten (10) days after any such objection is interposed, a hearing with respect thereto shall be conducted at a regularly-scheduled omnibus hearing in the Chapter 11 Cases, with any questioned redactions being submitted to the Court only for in camera review; and, provided, further, that the Debtors shall pay any undisputed portion of such fees, costs, and expenses in the interim period.

d.      Reporting and Budget Compliance.  Every three weeks (beginning with the third full week after the Petition Date), on the fourth business day of such week, the Debtors shall deliver to counsel to the Prepetition Collateral Agent, counsel to the Prepetition Noteholders, and the Committee, a variance report from the previous three weeks comparing the actual cash receipts and disbursements of the Debtors with the receipts and disbursements in the Approved Budget on a line item basis (the "**Budget Variance Report**").  The Debtors shall also provide the Prepetition Collateral Agent and the Prepetition Noteholders with (a) the monthly financial reporting given to the U.S. Trustee and (b) the financial reporting required under (and consistent with the requirements contained in) the Prepetition Note Documents.

e.      Right to Seek Additional Adequate Protection.  This Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the rights of the respective Prepetition Secured Parties to request additional forms of adequate protection at any time or the rights of the Debtors or any other party to contest such request.

4.      Events of Default.  The consent of the Prepetition Secured Parties to the use of their Cash Collateral is conditioned upon none of the following events occurring, each of which shall constitute an event of default to such consent (collectively, the "**Events of Default**"), unless waived by the Prepetition Collateral Agent:

12

f.  the failure by the Debtors to observe or perform any of the terms, provisions, conditions, covenants or obligations under this Interim Order;

g.  the date this Interim Order ceases to be in full force and effect for any reason to the extent a Final Order has not been entered at such time;

h.  the date the Court enters an order dismissing any of the Chapter 11 Cases;

i.  the date the Court enters an order converting any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code;

j.  the appointment of a trustee or examiner with expanded powers in the Chapter 11 Cases;

k.  the filing by any Debtor of any motion, pleading, application or adversary proceeding challenging the validity, enforceability, perfection or priority of liens securing the Prepetition Secured Obligations or asserting any other cause of action against and/or with respect to the Prepetition Secured Obligations or the Prepetition Collateral securing such obligations (or if the Debtors support any such motion, pleading, application or adversary proceeding commenced by any third party);

l.  the date the Debtors shall create, incur or suffer to exist any post-petition liens or security interests other than (a) those granted pursuant to this Interim Order, (b) carriers', maritime, mechanics', operator's, warehousemen's, repairmen's or other similar liens arising in the ordinary course of business, (c) pledges or deposits in connection with workers' compensation, unemployment insurance and other social security legislation, (d) deposits to secure the payment of any post-petition statutory obligations, performance bonds and other obligations of a like nature incurred in the ordinary course of business, and (e) any other junior

13

liens or security interests that the Debtors are permitted to incur under the Prepetition Note Documents;

   m.  the termination of the Purchase Agreement by either the Debtors or Derby SPV, Inc. in accordance with the terms thereof;

   n.  the date the Debtors consummate the sale of all or substantially all of the Debtors' business assets to a purchaser other than the Buyer (as defined in the Purchase Agreement);

   o.  the Debtors shall have failed to comply with the disbursement line items in the Approved Budget (other than any line item(s) for Professional Fees (as defined herein)) for any three-week period for which a Budget Variance Report is required, subject to an aggregate variance of 15% more than forecasted in the Approved Budget for such three-week period for any Business Outflows (as set forth in the Approved Budget) other than credit card fees (the "**Permitted Variance**");

   p.  any stay, reversal, vacatur, rescission or other modification of the terms of this Interim Order not consented to by the Prepetition Collateral Agent;

   q.  the failure by the Debtors to file a joint plan of liquidation under chapter 11 of the Bankruptcy Code by December 15, 2016;

   r.  the failure of the Canadian Subsidiaries to commence proposal proceedings (the "**Canadian Proposal Proceedings**") under the Canadian Bankruptcy and Insolvency Act ("**BIA**") by November 2, 2016; and

   s.  the date any of the Canadian Proposal Proceedings are converted to an assignment into bankruptcy under the BIA.

WEIL:\95923767\2\22541.0004

5. <u>Rights and Remedies Upon Event of Default</u>. The Debtors shall promptly provide notice to the Prepetition Collateral Agent (with a copy to the U.S. Trustee and the Committee, if any) of the occurrence of any Event of Default. Immediately upon the occurrence and during the continuation of an Event of Default, the Prepetition Collateral Agent may declare a termination, reduction or restriction on the ability of the Debtors to use Cash Collateral (any such declaration by the Prepetition Collateral Agent shall be referred to herein as a "**Termination Declaration**") upon five (5) business days' notice (the "**Notice Period**") to the Debtors, the U.S. Trustee, and counsel to the Committee (if any). Unless the Court orders otherwise following the Notice Period, the Debtors' right to use the Cash Collateral shall cease, be reduced or restricted, as set forth in the Termination Declaration, the automatic stay pursuant to section 362 of the Bankruptcy Code shall be automatically terminated without further notice or order of the Court, and the Prepetition Collateral Agent shall be permitted to exercise all rights and remedies set forth in this Interim Order without further order or application or motion to the Court, and without restriction or restraint by any stay under sections 362 or 105 of the Bankruptcy Code (such date after expiration of the Notice Period, the "**Termination Date**"). Notwithstanding anything herein to the contrary, upon an Event of Default, the Debtors shall be entitled to seek an emergency hearing for appropriate relief, including non-consensual use of cash collateral, and the Prepetition Secured Parties reserve all of their respective rights to contest any such motion or request by the Debtors or any other person; <u>provided</u> that the Debtors may not utilize Cash Collateral to seek such authority.

6. <u>Effect of Stipulations on Third Parties</u>. The stipulations, admissions and releases contained in paragraph E of this Interim Order shall be immediately binding upon the Debtors and their affiliates and any of their respective successors (including, without limitation,

15

any chapter 7 or chapter 11 trustee appointed or elected for any Debtor) in all circumstances except in the event of a Successful Challenge (as defined below). The stipulations, admissions and releases contained in paragraph E of this Interim Order shall be binding upon all other parties in interest, including, without limitation, any Committee and any other person or entity acting (or purporting to act) on behalf of the Debtors' estates, in all circumstances, unless and except to the extent that, (i) upon notice to the Debtors, a party in interest with proper standing (which has been granted by order of the Court or another court of competent jurisdiction) has timely filed an adversary proceeding or contested matter (subject to the limitations contained herein, including, *inter alia*, in paragraph 8) by no later than (a) seventy-five (75) calendar days after the date of entry of this Interim Order for parties in interest other than the Committee and (b) sixty (60) calendar days after the Committee is formed for the Committee (the "**Investigation Termination Date**"), (A) challenging the validity, enforceability, priority, or extent of the Prepetition Secured Obligations or (B) otherwise asserting or prosecuting any action for preferences, fraudulent transfers, or conveyances, other avoidance power claims or any other claims, counterclaims or causes of action, objections, contests, or defenses to the extent released by the Debtors under paragraph E of this Interim Order (items (A) and (B) collectively, "**Claims**") against any of the Prepetition Secured Parties or their affiliates, representatives, attorneys, or advisors in connection with matters related to the Prepetition Collateral, and (ii) the Court enters a final, non-appealable order ruling in favor of the plaintiff sustaining any such Claims in any such duly filed adversary proceeding or contested matter (a "**Successful Challenge**"); provided, however, that any Claim shall set forth with specificity the basis for such Claim and any Claim not so specified prior to the expiration of the Investigation Termination Date shall be forever deemed waived, released, and barred. If no such adversary proceeding or

16

contested matter is timely filed, (x) the Prepetition Secured Obligations shall constitute allowed claims, not subject to counterclaim, setoff, recoupment, reduction, subordination, recharacterization, defense, or avoidance, for all purposes in the Chapter 11 Cases and any subsequent chapter 7 case, (y) the liens and security interests securing the Prepetition Secured Obligations shall be deemed to have been, as of the Petition Date, legal, valid, binding, and perfected, not subject to recharacterization, subordination, or avoidance, and (z) the Prepetition Secured Obligations, the liens and security interests securing the Prepetition Secured Obligations, and the Prepetition Secured Parties shall not be subject to any other or further challenge or Claim, by any party in interest seeking to exercise the rights of any Debtor's estate, including, without limitation, any successor thereto (including, without limitation, any chapter 7 or 11 trustee appointed or elected for the Debtor).  If any such adversary proceeding or contested matter is timely filed, the stipulations and admissions contained in paragraph E of this Interim Order shall nonetheless remain binding and preclusive (as provided in the second sentence of this paragraph) on any Committee and on any other person or entity, except to the extent that such findings and admissions were expressly challenged in such adversary proceeding or contested matter prior to the Investigation Termination Date in accordance with this Interim Order. Nothing in this Interim Order vests or confers on any "person" (as defined in the Bankruptcy Code), including any Committee, standing or authority to bring, pursue, or settle any cause of action belonging to the Debtors or their estates, including, without limitation, Claims with respect to the Prepetition Notes Documents or the Prepetition Secured Obligations, and, subject to entry of a Final Order, an order of the Court conferring such standing on the Committee or other party-in-interest shall be a prerequisite for the filing of and prosecution of Claims by the Committee or such other party-in-interest.

17

7.    <u>Carve-Out</u>.  All liens, security interests, and claims granted herein (including the Adequate Protection Liens and any Superpriority Claims), the Prepetition Liens, and any other liens, claims, or interest of any person, shall be subject and subordinate to the Carve-Out.  "**Carve-Out**" shall mean the sum of (i) all fees required to be paid to the Clerk of the Court and to the U.S. Trustee under section 1930(a) of title 28 of the United States Code, together with the statutory rate of interest (without regard to the notice set forth in (ii) below, and without regard to any Budget) (the "**U.S. Trustee Fees**"); (ii) upon the Termination Date, to the extent allowed at any time, whether by interim order, procedural order, or otherwise, all unpaid fees, costs, and expenses (the "**Professional Fees**") incurred by persons or firms retained by the Debtors pursuant to section 327, 328, or 363 of the Bankruptcy Code or any statutory committee appointed in these Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code (collectively, the "**Professional Persons**"), whether such fees were incurred before or on the date of delivery by the Prepetition Collateral Agent of a Carve-Out Trigger Notice (as defined below), whether allowed by the Court prior to or after delivery of a Carve-Out Trigger Notice (the "**Pre-Trigger Date Fees**"); and (iii) after the date of delivery of the Carve-Out Trigger Notice (the "**Trigger Date**"), to the extent incurred after the Trigger Date, the payment of Professional Fees of Professional Persons in an aggregate amount not to exceed $200,000 (the amount set forth in this clause (iii) being the "**Post Carve-Out Trigger Notice Cap**").  For purposes of the foregoing, "**Carve-Out Trigger Notice**" shall mean written notice by the Prepetition Collateral Agent to the Debtors, its lead counsel, the U.S. Trustee, and lead counsel for any Committee, delivered upon the occurrence of a Termination Date under the Interim Order, stating that the Post Carve-Out Trigger Notice Cap has been invoked.

8.      No proceeds of Prepetition Collateral or the Carve-Out shall be used for the purpose of: (a) investigating, objecting to, challenging, or contesting in any manner, or in raising any defenses to, the amount, validity, extent, perfection, priority, enforceability, or avoidability of the Prepetition Secured Obligations, or any liens or security interests with respect thereto, or any other rights or interests of any of the Prepetition Secured Parties, whether in their capacity as such or otherwise, including with respect to the Adequate Protection Liens, or in asserting any claims or causes of action against any of the Prepetition Secured Parties (whether in their capacity as such or otherwise), including, without limitation, for lender liability or pursuant to section 105, 510, 544, 547, 548, 549, 550, or 552 of the Bankruptcy Code, applicable non-bankruptcy law or otherwise; or (b) paying any amount on account of any claims arising before the Petition Date unless such payments are approved by an order of this Court; provided, however, that up to $15,000 of Cash Collateral or the Carve-Out in the aggregate shall be made available to the Committee for fees and expenses incurred in connection with any investigation of the liens and claims of the Prepetition Secured Parties (the "**Committee Investigation Budget**") but may not be used to initiate, assert, join, commence, support, or prosecute any actions or discovery with respect thereto.  The Prepetition Secured Parties reserve the right to object to, contest, or otherwise challenge any claim for amounts incurred in connection with such activities (including amounts incurred in connection with an investigation in excess of the Committee Investigation Budget) on the grounds that such claim shall not be allowed, treated, or payable as an administrative expense claim for purposes of section 1129(a)(9)(A) of the Bankruptcy Code.

9.      Further Assurances.    The Debtors shall execute and deliver to the Prepetition Collateral Agent all such agreements, financing statements, instruments, and other

19

documents as they may reasonably request to evidence, confirm, validate, or evidence the perfection of the Adequate Protection Liens granted pursuant hereto.

10.     506(c) Waiver. Subject to the entry of the Final Order, no costs or expenses of administration which have been or may be incurred in any of the Chapter 11 Cases at any time shall be charged against any Prepetition Secured Party, any of the Prepetition Secured Obligations, any of their respective claims, or the Collateral pursuant to sections 506(c) or 105(a) of the Bankruptcy Code, or otherwise, without the prior written consent of the affected Prepetition Collateral Agent, and no such consent shall be implied from any other action, inaction, or acquiescence by any of the Prepetition Secured Parties or their respective representatives.

11.     Automatic Effectiveness of Liens. The Adequate Protection Liens shall not be subject to challenge and shall attach and become valid, perfected, enforceable, non-avoidable, and effective by operation of law as of the Petition Date, without any further action by the Debtors or the Prepetition Secured Parties and without the necessity of execution by the Debtors, or the filing or recordation, of any financing statements, security agreements, vehicle lien applications, mortgages (including ships' mortgages), filings with the U.S. Patent and Trademark Office, the U.S. Copyright Office, or the Library of Congress, or other documents or the taking of any other actions. If the Prepetition Collateral Agent hereafter reasonably requests that the Debtors execute and deliver financing statements, security agreements, collateral assignments, mortgages, or other instruments and documents considered by the Prepetition Collateral Agent to be reasonably necessary or desirable to further evidence the perfection of the Adequate Protection Liens, as applicable, the Debtors are hereby authorized and directed to execute and deliver such financing statements, security agreements, mortgages, collateral

20

assignments, instruments, and documents, and the Prepetition Collateral Agent is hereby authorized to file or record such documents in their discretion without seeking modification of the automatic stay under section 362 of the Bankruptcy Code, in which event all such documents shall be deemed to have been filed or recorded at the time and on the date of entry of this Interim Order.

12.    **No Marshaling/Application of Proceeds**. Subject to entry of the Final Order, in no event shall any of the Prepetition Secured Parties be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Collateral; <u>provided</u> that any Prepetition Secured Party shall be entitled to seek to apply such marshaling or other similar doctrines with respect to another Prepetition Secured Party.

13.    **Binding Effect**.    Subject to paragraph 6 of this Interim Order, the provisions of this Interim Order shall be binding upon and inure to the benefit of the Prepetition Secured Parties to the extent and as set forth herein, the Debtors, any Committee, and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereafter appointed or elected for the estate of any of the Debtors, an examiner appointed pursuant to section 1104 of the Bankruptcy Code or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors).  To the extent permitted by applicable law, this Interim Order shall bind any trustee hereafter appointed for the estate of any of the Debtors, whether in these Chapter 11 Cases or in the event of the conversion of any of the Chapter 11 Cases to a liquidation under chapter 7 of the Bankruptcy Code. Such binding effect is an integral part of this Interim Order.

14.    **Modification of Automatic Stay**. The Debtors are authorized and directed to perform all acts and to make, execute and deliver any and all instruments as may be

21

reasonably necessary to implement the terms and conditions of this Interim Order and the transactions contemplated hereby. The stay of section 362 of the Bankruptcy Code is hereby modified to permit the Debtors and each of the Prepetition Secured Parties to accomplish the transactions contemplated by this Interim Order.

   15. <u>Survival</u>. The provisions of this Interim Order, the rights of the Prepetition Secured Parties under this Interim Order, and any actions taken pursuant hereto shall survive the entry of any order: (i) confirming any chapter 11 plan in any of the Chapter 11 Cases, (ii) converting any of the Chapter 11 Cases to a chapter 7 case, (iii) dismissing any of the Chapter 11 Cases, or (iv) substantively consolidating any of the Chapter 11 Cases, and, with respect to the entry of any order as set forth in clause (ii), (iii), or (iv) of this paragraph 15, the terms and provisions of this Interim Order as well as the Adequate Protection Liens and Superpriority Claims shall continue in full force and effect notwithstanding the entry of any such order.

   16. <u>Failure to Seek Relief</u>. The Prepetition Secured Parties' failure to seek relief or otherwise exercise their rights and remedies under this Interim Order shall not constitute a waiver of any of its rights and remedies hereunder or otherwise.

   17. <u>Order Effective</u>. This Interim Order shall be effective as of the date of its entry.

   18. <u>Controlling Effect of Interim Order</u>. To the extent any provision of this Interim Order conflicts or is inconsistent with any provision of the Motion, the provisions of this Interim Order shall control to the extent of such conflict.

   19. <u>Reservation of Rights of Heritage Home Group, LLC</u>. Heritage Home Group, LLC ("**HHG**") asserts it has a purchase money security interest in all inventory and other

22

goods of DirectBuy, Inc. acquired from HHG, as well as accounts, chattel paper, deposit accounts, insurance claims and proceeds and contractual rights relating to such goods and other proceeds from the sale or other disposition of such goods (the "**HHG Collateral**") pursuant to a security agreement, dated December 11, 2008, which was assumed and assigned to HHG in the Chapter 11 cases of Furniture Brands International, Inc. and other affiliates. See Case No. 13-12329. To the extent HHG holds a valid and perfected security interest in the HHG Collateral, HHG is hereby granted a replacement lien on and security interest in, to the extent of any diminution in value of the HHG Collateral, the same type of assets which constitute the HHG Collateral that are acquired post-petition by the Debtors from HHG, up to the amount of the Debtors' total debt to HHG (the "**HHG Replacement Liens**") The HHG Replacement Liens and adequate protection granted to HHG pursuant to this paragraph 19 are without prejudice to (i) HHG seeking further and other adequate protection and (ii) the Debtors, the Committee, the Prepetition Secured Parties and other parties in interest disputing the validity and perfection of HHG's security interest.

20.     Final Hearing. The Final Hearing is scheduled for November 28, 2016 at 1:00 p.m., prevailing Eastern Time, before this Court. The Debtors shall promptly mail a notice of the Final Hearing, together with copies of this Interim Order (which shall constitute adequate notice of the Final Hearing) to the parties having been given notice of the Interim Hearing and to any other party that has filed a request for notices with this Court and to any Committee. Any party in interest objecting to the relief sought at the Final Hearing shall serve and file written objections; which objections shall be served upon (i) Cole Schotz P.C., Court Plaza North, 25 Main Street, Hackensack, New Jersey 07601, Attn: Ilana Volkov, Esq. (ivolkov@coleschotz.com) and 500 Delaware Avenue, Suite 1401, Wilmington, DE 19801, Attn:

23

Nicholas J. Brannick, Esq. (nbrannick@coleschotz.com), counsel to the Debtors; (ii) the Office of the United States Trustee for the District of Delaware, 844 King Street, Room 2207, Wilmington, DE 19801 (Juliet.M.Sarkessian@usdoj.gov); (iii) in the event a Committee is appointed, counsel to the Committee; (iv) Dorsey & Whitney LLP, 51 W. 52nd Street, New York, New York, 10019, Attn: Mark Jutsen, Esq. (jutsen.mark@dorsey.com), counsel to the Prepetition Collateral Agent; and (v) Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, Attn.: Brian S. Rosen, Esq. (brian.rosen@weil.com), counsel to the ad hoc group of Prepetition Noteholders; and shall be filed with the Clerk of the United States Bankruptcy Court, District of Delaware, 824 King Street, Wilmington, DE 19801, in each case to allow actual receipt by the foregoing no later than November 21, 2016 at 4:00 p.m., prevailing Eastern Time.

Dated: November 4, 2016
      Wilmington, Delaware

                                   CHRISTOPHER S. SONTCHI
                                   UNITED STATES BANKRUPTCY JUDGE

WEIL:\95923767\2\22541.0004