# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| AV DEBTOR HOLDINGS, *et al.*,[1] | ) | Case No. 18-11142 (CSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |

Objection Deadline:  October 2, 2018 at 4:00 p.m. (ET)
Hearing Date:  October 10, 2018 at 2:00 p.m. (ET)

## DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) DISMISSING THE CHAPTER 11 CASES; (II) AUTHORIZING THE ABANDONMENT OF CERTAIN PROPERTY; (III) TERMINATING CLAIMS AND NOTICING SERVICES; (IV) EXCULPATING CERTAIN PARTIES FROM LIABILITY IN CONNECTION WITH THESE CHAPTER 11 CASES; AND (V) GRANTING RELATED RELIEF

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors") respectfully request the entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Dismissal Order"): (a) dismissing these chapter 11 cases (the "Chapter 11 Cases"); (b) authorizing, but not directing, the Debtors to abandon the Wonder Vision Claims and Unsold Collateral to the Collateral Agent (each as defined below) or such other party as the Collateral Agent may designate; (c) exculpating certain parties from liability in connection with these Chapter 11 Cases; (d) terminating the claims and noticing services of Omni Management Group, Inc. ("Omni"); and (e) granting related relief.  In support of this motion (the "Motion"), the Debtors respectfully state as follows.

---

[1]  The Debtors and the last four digits of their U.S. tax identification number are [AV Debtor Holdings] (f/k/a Arecont Vision Holdings, LLC) (9187), [AV Debtor] (f/k/a Arecont Vision, LLC) (1410), and [AV Debtor IC DISC] (f/k/a Arecont Vision IC DISC) (5376).  The Debtors' noticing address in these chapter 11 cases is AV Debtor Holdings, *et al.* c/o Armory Strategic Partners, LLC, 1230 Rosecrans Avenue, Suite 660, Manhattan Beach, CA  90266, Attn:  T. Scott Avila, Chief Restructuring Officer.

## PRELIMINARY STATEMENT

1.      Following the successful Court-approved sale of substantially all of the Debtors' assets, the Debtors submit that dismissal of these Chapter 11 Cases, with limited exculpation of estate fiduciaries, is appropriate.  As a result of a competitive auction, which resulted in approximately thirty overbids, the purchase price for the Debtors' assets increased by $3,875,000.   In addition, the purchaser agreed to fix the working capital adjustment at $2,228,000 and waived any lookback period, which was highly beneficial to the estates.  The purchaser also assumed significant liabilities of the Debtors, including certain prepetition debt, administrative claims, and importantly, employee paid time off obligations.  The sale closed on July 13, 2018, resulting in the satisfaction of the Debtors' obligations under a debtor-in-possession financing facility.[2]

2.      As a result of the sale, the Debtors believe that no material unencumbered assets remain in the estates and there is no reasonable prospect of further distributions to holders of unsecured claims (the amount of which the Debtors estimate to be no more than $500,000). Only one pending lawsuit remains, which was pending before the bankruptcy filing and carved out of the sale – the Wonder Vision Claims (as defined below).  The Debtors are plaintiffs in this action and the expected proceeds of such claims are subject to the liens of the Collateral Agent. Without funding for this litigation or a chapter 11 plan or unencumbered assets to be used in a chapter 7 liquidation, the Debtors submit that dismissal is the most expeditious and cost-effective means of winding-down their affairs, along with the requested abandonment of the Unsold

---

[2]  The purchaser also acquired avoidance claims against any existing customer or vendor of the Debtors' business with the expectation that such claims would not be pursued.

DOCS_DE:220441.8

Collateral (including the Wonder Vision Claims) to the Collateral Agent (or such other party as the Collateral Agent designates), In this context and given the success of the sale, the Debtors believe that limited exculpation of estate fiduciaries is warranted.  The Debtors therefore request dismissal of these Chapter 11 Cases pursuant to the terms of the proposed Dismissal Order.

## JURISDICTION AND VENUE

3.    The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States District Court for the District of Delaware, dated February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors confirm their consent pursuant to rule 9013-l(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

4.    Venue for this matter is proper in this district pursuant to 28 U.S.C. sections 1408 and 1409.

5.    The statutory bases for the relief requested herein are sections 105(a), 305, 349, 363(b)(1), 554(a), and 1112(b) of title 11 of the United States Code (as amended, the "Bankruptcy Code"), rules 1017, 2002, 3003, 6007 and 9013 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rule 1017-2.

DOCS_DE:220441.8

## BACKGROUND

**A.      General Background**

6.      On May 14, 2018 (the "Petition Date"), each of the Debtors filed with this Court voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  Until the closing of the sale, the Debtors operated their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

7.      Prior to the sale, the Debtors were in the business of designing, manufacturing, distributing and selling IP-based megapixel cameras for use in video surveillance applications globally, serving a broad range of industries.  The Debtors offered seven megapixel product families ranging from MegaVideo® single-sensor cameras from 1 to 10 megapixels and SurroundVideo® multi-sensor cameras from 8 to 40 megapixels at various price points.

8.      The factual background regarding the Debtors, including their historical business operations and the events precipitating the chapter 11 filings, is set forth in detail in the *Declaration of T. Scott Avila, Chief Restructuring Officer, in Support of First Day Motions* (the "First Day Declaration") filed on the Petition Date at Docket No. 4 and fully incorporated herein by reference.

**B.      The DIP Facility and Sale**

9.      On June 7, 2018, the Court entered the *Final Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, and 507, Bankruptcy Rules 2002, 4001, 6004, and 9014, and Local Rule 4001-2 (I) Authorizing the Debtors to Use Cash Collateral and Obtain Post-Petition Financing, (II) Granting Liens and Providing Super-Priority Administrative Expense Status, (III)*

4

*Granting Adequate Protection, (IV) Scheduling A Final Hearing, and (V) Granting Related Relief* [Docket No. 107] (the "<u>Final DIP Order</u>"), authorizing the Debtors to obtain up to $4,000,000 in debtor-in-possession financing (the "<u>DIP Financing</u>"). The Final DIP Order provided the Debtors with access to necessary funding to maintain their operations and satisfy administrative costs during these Chapter 11 Cases, while pursuing a sale of substantially all of their assets.

10.     Also on June 7, 2018, the Court entered the *Order (A) Authorizing Entry Into the Asset Purchase Agreement With Respect to the Sale of Substantially All of the Debtors' Assets; (B) Approving Bid Procedures for the Sale of Substantially All of the Assets of Debtors; (C) Scheduling an Auction and Hearing to Consider the Sale and Approve the Form and Manner of Notice Related Thereto; (D) Establishing Procedures Relating to the Assumption and Assignment of Certain Contracts and Leases, Including Notice of Proposed Cure Amounts; (E) Approving Certain Breakup Fee and Expense Reimbursement Provisions; and (F) Granting Other Related Relief* (the "<u>Bid Procedures Order</u>"), which provided that interested parties were required to submit Qualified Bids (as defined in the Bid Procedures Order) by June 29, 2018. The Debtors received two Qualified Bids, and an auction was held on July 9, 2018.

11.     As a result of the successful auction, Arecont Vision Costar LLC (the "<u>Purchaser</u>"), an affiliate of Costar Video Systems, LLC, was determined to be the highest and best bid. The final purchase price of $13,875,000.00 was approximately $3,875,000 above the initial stalking horse bid. Additionally, the Purchaser agreed to fix the working capital adjustment at $2,228,000 and to waive a sixty-day lookback period, which was highly beneficial

to the estates. Further, as set forth in section 1.3 of the Purchase Agreement (attached as Exhibit 1 to the Sale Order (as defined below)), among other things, the Purchaser assumed significant liabilities, including certain prepetition debt, administrative obligations, accrued sick pay, vacation, and other paid time off of employees, and certain trade accounts payable of the Debtors.[3]

12. The terms of the sale (the "Sale") are set forth in the *Order (A) Authorizing the Sale of Substantially All of the Debtors' Assets Pursuant to Asset Purchase Agreement(s) Free and Clear of Liens, Claims and Encumbrances, and Other Interests; (B) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto; and (C) Granting Related Relief* [Docket No. 168] (the "Sale Order"). The assets sold as part of the Sale constituted collateral of the Collateral Agent (as defined below).

## C.  Abandonment of the Wonder Vision Claims and All Remaining Unsold Collateral

13. Pursuant to this Motion, the Debtors request authority to abandon all remaining unsold collateral (the "Unsold Collateral") of US Bank National Association (the "Collateral Agent"), as the Collateral Agent for certain insurance company purchasers advised by AIG Asset Management (U.S.), LLC (together, "AIG"), as holders of certain notes (the "Prepetition Notes") issued or guaranteed by the Debtors under that certain that *Note Purchase Agreement*, dated as of March 31, 2014 (as amended, amended and restated, supplemented or otherwise modified from time to time, the "Prepetition Secured Note Agreement") and certain

---

[3] The Purchaser also acquired avoidance claims against any existing customer or vendor of the Debtors' business with the expectation that such claims would not be pursued.

related agreements (together with the Prepetition Secured Note Agreement, the "Prepeition Note Documents"). The obligations under the Prepetition Note Documents are secured by first and second priority liens against substantially all of the Debtors assets (the "Prepetition Liens"), including all rights, claims, interests, privileges and defenses of the Debtors in, to and under, arising from, related and/or asserted in connection with the certain litigation styled as "Arecont Vision Holdings, LLC v. Wonder Vision Inc., et al.," pending under Case No. 2017-0741-JRS in the Court of Chancery of the State of Delaware, including the right to pursue or settle and compromise any such claims and the proceeds thereof (the "Wonder Vision Claims"). Pursuant to the Final DIP Order, the Prepetition Liens are deemed legal, valid, perfected, enforceable, and non-avoidable for all purposes. Final DIP Order ¶ 20.

14.    The Debtors propose to abandon the Unsold Collateral to the Collateral Agent, which would include the Wonder Vision Claims. As set forth in the First Day Declaration, on March 3, 2017, the Debtors reached a share purchase agreement for the interests of the Debtors with NetPosa Technologies, Ltd. ("NetPosa"), for a purchase price of $170,000,000, subject to customary working capital adjustments (the "NetPosa Sale Agreement"). Following the execution of the NetPosa Sale Agreement, the Debtors' performance began to decline, and NetPosa terminated the NetPosa Sale Agreement in September 2017, which it was not permitted to do under the terms of the NetPosa Sale Agreement. In October 2017, Arecont Vision Holdings filed suit against NetPosa for breach of contract and other claims, seeking recovery of the $8,600,000 deposit from the NetPosa Sale Agreement (which remains in escrow), and $50,000,000 in damages.

15.     Prior to the filing of these Chapter 11 Cases, Arecont Vision Holdings, LLC assigned to Arecont Vision, LLC all rights, title and interest in and ownership of the Wonder Vision Claims, provided that Messrs. Michael Kaplinsky and Vladimir Berezin (the Debtors' former principals) are entitled to payment of 10% of the net cash proceeds received by the Debtors on account of the Wonder Vision Claims as long as they reasonably assist in the prosecution of such claims. AIG, on the one hand, and Messrs. Kaplinsky and Berezin, on the other hand, also released each other of all potential claims and causes of action, as did the Debtors, on the one hand, and Messrs. Kaplinsky and Berezin, on the other hand.    The Settlement Agreement reaffirmed that the Wonder Vision Claims and the proceeds thereof, other than the percentage of proceeds earmarked for Messrs. Kaplinsky and Berezin, are subject to the Prepetition Liens.

16.     There is no funding currently available to the Debtors' estates to continue to prosecute the Wonder Vision Claims and the expected proceeds thereof would constitute the collateral of the Collateral Agent.    The Debtors therefore seek to abandon the Wonder Vision Claims and assign all right, title and interest in and ownership of such claims, including all rights and interests of the Debtors under the NetPosa Sale Agreement, the related escrow agreement (including any right of the Debtors to receive funds held in escrow) and any other related document and any rights to recover or collect amounts owed thereunder, to the Collateral Agent or such other party as the Collateral Agent may designate, subject to the rights and obligations of Messrs. Kaplinsky and Berezin.

**D.      Payment of Professional Fees**

17.      On June 7, 2018, the Court entered the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* [Docket No. 102] (the "Interim Compensation Order").   Pursuant to the Interim Compensation Order, the Court approved procedures for governing applications for and payment of fees and expense requested by professionals.   All professionals retained in these Chapter 11 Cases intend to file final fee applications to be considered prior to, at, or following the hearing on this Motion.   The Debtors request that the Court retain jurisdiction to consider and rule on any final fee applications following entry of the Dismissal Order, to the extent necessary.

## Relief Requested

18.      By this Motion, the Debtors request entry of the Dismissal Order, (i) authorizing the abandonment of certain assets not included in the Sale, (ii) exculpating certain parties from liability in connection with these cases, (iii) dismissing these Chapter 11 Cases pursuant to § 1112(b) of the Bankruptcy Code, (iv) terminating the claims and noticing services of Omni, and (v) granting related relief.

**A.      Cause Exists to Dismiss These Chapter 11 Cases Under Section 1112(b) of the Bankruptcy Code**

19.      Section 1112(b) of the Bankruptcy Code provides that "on request of a party in interest, and after notice and a hearing, the court *shall* convert a case under [chapter 11] to a case under chapter 7 or dismiss a case under [chapter 11], whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment … of a trustee or examiner is in the best interests of creditors and the estate."   11 U.S.C. § 1112(b)(1)

(emphasis added).   The party seeking dismissal bears the burden to establish the requisite

"cause." In re Riverbend Cmty., LLC, No. 11-11771, 2012 WL 1030340, at *3 (Bankr. D. Del.

Mar. 23, 2012).  In addition, "[t]he determination of cause under § 1112(b) is subject to judicial

discretion under the circumstances of each case." In re Am. Capital Equip., LLC, 688 F.3d 145,

161 (3d Cir. 2012) (quoting Albany Partners, Ltd. v. Westbrook (In re Albany Partners, Ltd.),

749 F.2d 670, 674 (11th Cir. 1984)).

      20.    According to the Third Circuit, "[s]ection 1112(b) requires a two-step

process in which the court first determines whether there is 'cause' to convert or dismiss, and

next chooses between conversion and dismissal based on 'the best interest of creditors and the

estate.'" Am. Capital Equip., 688 F.3d at 161 (quoting 11 U.S.C. § 1112(b)).  Once "cause" is

established under section 1112(b) of the Bankruptcy Code (and assuming that the Court declines

to appoint a trustee or examiner), the Court *must* dismiss or convert the case unless (a) "the court

finds and specifically identifies unusual circumstances establishing that … dismissing the case is

not in the best interests of creditors and the estate;" (b) "there is reasonable likelihood that a plan

will be confirmed within the timeframes established in sections 1121(e) and 1129(e) of

[the Bankruptcy Code], or if such sections do not apply, within a reasonable period of time;" and

(c) an objecting party establishes certain other enumerated statutory requirements.[4]   11 U.S.C.

§ 1112(b)(2); see also In re Scarborough–St. James Corp., No. 15-10625, 2015 WL 5672628, at

---

[4] Specifically, a party opposing a motion to dismiss under section 1112(b) of the Bankruptcy Code also must establish that "the grounds for converting or dismissing a case include an act or omission of the debtor other than under paragraph (4)(A) [providing that cause for dismissal includes 'substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation']—(i) for which there exists a reasonable justification for the act or omission; and (ii) that will be cured within a reasonable period of time fixed by the court." 11 U.S.C. § 1112(b)(2)(B).

*2 (Bankr. D. Del. Sept. 24, 2015) (except where these "limited circumstances" are present, "[o]nce the Court finds that 'cause' exists, dismissal or conversion is necessary"); Riverbend Cmty., 2012 WL 1030340, at *3 ("Section 1112(b) is clear that the Court must dismiss or convert Debtor's case if Movants establish 'cause,' which is defined in Section 1112(b)(4). The only 'but' to the mandatory conversion or dismissal is if a debtor can prove the existence of 'unusual circumstances specifically identified by the court' showing that dismissal or conversion is not in the best interests of the creditors and the estate.") (internal citation omitted).

21.     Section 1112(b)(4) of the Bankruptcy Code lists several examples of factors supporting a finding that "cause" exists within the meaning of section 1112(b)(1), including where there is "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation" or "failure to … confirm a plan, within the time fixed by [the Bankruptcy Code] or by order of the court." 11 U.S.C. § 1112(b)(4)(A), (J). "As provided in the plain language of the Code, courts have held that if one of the grounds for dismissal or conversion is § 1112(b)(4)(A) (substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation), the § 1112(b) inquiry ends; the case must be converted or dismissed." In re Korn, 523 B.R. 453, 465 n.28 (Bankr. E.D. Pa. 2014) (collecting cases).

22.     This list of examples constituting "cause" for dismissal or conversion set forth in section 1112(b)(4) of the Bankruptcy Code is non-exclusive, however, and "cause" also may be found under circumstances not specifically addressed in that provision. See Am. Capital Equip., 688 F.3d at 161 ("Section 1112(b) provides a non-exhaustive list of grounds for finding

11

'cause' to convert or dismiss.") (citing In re SGL Carbon Corp., 200 F.3d 154, 160 (3d Cir. 1999)); Scarborough-St. James, 2015 WL 5672628, at *2 ("'Cause' is a flexible standard, and the examples listed in subsection (b)(4) are not exhaustive.") (citing In re Inwood Heights Hous. Dev. Fund Corp., No. 11-13322, 2011 WL 3793324, at *6 (Bankr. S.D.N.Y. Aug. 25, 2011)); Korn, 523 B.R. at 464-65 ("The examples [of 'cause' set forth in section 1112(b)(4)] are illustrative and not exhaustive.") (citations omitted); In re PM Cross, LLC, 494 B.R. 607, 617 (Bankr. D.N.H. 2013) (section 1112(b)(4)'s list of factors constituting "cause" is "not exclusive," and "the court may consider other factors as they arise and use its powers to reach appropriate results in individual cases") (quoting In re Gonic Realty Tr., 909 F.2d 624, 626 (1st Cir. 1990)).

23.    According to the Third Circuit, in addition to the factors specifically enumerated in section 1112(b)(4) of the Bankruptcy Code, "[a] court may also find cause [under section 1112(b)] where there is not 'a reasonable possibility of a successful reorganization within a reasonable period of time.'" Am. Capital Equip., 688 F.3d at 162 (quoting First Jersey Nat'l Bank v. Brown (In re Brown), 951 F.2d 564, 572 (3d Cir. 1991)); see also Anderson v. Commonwealth Renewable Energy, Inc. (In re Commonwealth Renewable Energy, Inc.), 550 B.R. 279, 283 (Bankr. W.D. Pa. 2016) (same). The Third Circuit also has stated that, even though the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") modified the list of examples set forth in section 1112(b)(4) constituting "cause" for dismissal or conversion – including by replacing the phrase "inability to effectuate a plan" with "inability to effectuate substantial consummation of a confirmed plan" – post-BAPCPA, "the 'inability to

effectuate a plan' remains a viable basis for dismissal because the listed examples of cause are not exhaustive." Id. at 162 n.10 (citing DCNC N.C. I, L.L.C. v. Wachovia Bank, N.A., No. 09-3775, 2009 WL 3209728, at *5 (E.D. Pa. Oct. 5, 2009)) (quotation marks omitted).

24.     Here, the Debtors have sold substantially all of their assets in connection with the Sale and no longer have ongoing operations.  The Debtors also are not aware of any material unencumbered assets.  Therefore, the Debtors have no going concern value to preserve or property available to generate value for the benefit of unsecured creditors (the claims of which the Debtors estimate to be less than $500,000).   All that remains of value is the Unsold Collateral, including the Wonder Vision Claims, which the Debtors now seek to abandon to the Collateral Agent for the benefit of AIG.

25.     Absent dismissal, the Debtors will continue to incur substantial chapter 11 administrative expenses with no available funds to pay such expenses.  The Debtors do not have access to unencumbered assets necessary to fund a chapter 11 plan or the pursuit of the Wonder Vision Claims.  Because the estates have no unencumbered assets, there would be no meaningful role for a chapter 7 trustee.  Thus, the Debtors believe that dismissal of these Chapter 11 Cases is the best means of achieving an orderly and efficient wind-up of their affairs, and cause exists to dismiss these cases pursuant to § 1112(b)(4) of the Bankruptcy Code.

**B.     Dismissal is in the Best Interest of the Debtors' Creditors and Their Estates**

26.     Once a court determines that cause exists to dismiss a debtor's chapter 11 case, the court must then evaluate whether dismissal is in the best interests of the debtor's creditors and the estate. See, e.g., Rollex Corp. v. Associated Materials, Inc. (In re Superior

Siding & Window, Inc.), 14 F.3d 240, 242 (4th Cir. 1994) ("Once 'cause' is established, a court is required to consider this second question of whether to dismiss or convert."). Dismissal of a chapter 11 bankruptcy case meets the "best interests of creditors" test where a debtor has nothing to reorganize and the debtor's assets are fixed and liquidated. See Camden Ordinance Mfg. Co. of Ark., Inc. v. U.S. Tr. (In re Camden Ordnance Mfg. Co. of Ark., Inc.), 245 B.R. 794, 799 (E.D. Pa. 2000) (reorganization to salvage business which ceased business was unfeasible).

27.    Here, the Debtors have nothing left to reorganize because substantially all of their assets and operations were sold pursuant to the Sale Order, and the material assets remaining in the Debtors' estates are encumbered by the liens of the Collateral Agent and not available for distributions to unsecured creditors pursuant to a chapter 11 plan or upon conversion to chapter 7 (as noted above, the pool of unsecured claims also should be quite small).

28.    Additionally, a court may find dismissal to be in the "best interests of the creditors" where a debtor demonstrates the ability to oversee its own liquidation. See Camden Ordinance,. 245 B.R. at 797-98; Mazzocone, 183 B.R. 402, 412 (Bankr. E.D. Pa. 1995) ("Only when a Chapter 11 debtor has no intention or ability to . . . perform its own liquidation . . . should a debtor be permitted to remain in bankruptcy . . . ."). Here, the Debtors have already liquidated their assets pursuant to the Sale Order and have otherwise demonstrated themselves to be capable of overseeing their own liquidation.

29.    Additionally, dismissal is appropriate because it will maximize the value of the Debtors' estates. The alternative—conversion to a chapter 7 liquidation and appointment

14

of a trustee—is unnecessary, would provide no benefit to unsecured creditors (of which there are few), and would impose significant additional administrative costs upon the Debtors' estates without any meaningful source of funds to satisfy such costs.  A chapter 7 trustee would have no access to unencumbered funds to satisfy any claims arising after conversion to chapter 7 of the Bankruptcy Code.  As a result, creditors would not receive greater recoveries in a chapter 7 liquidation.

**C.    The Debtors are Not Deviating from the Priority Scheme**

30.    The proposed dismissal complies with applicable law governing distributions of estate property.  As stated by the Supreme Court, a final disposition "in connection with the dismissal of a Chapter 11 case cannot, without the consent of the affected parties, deviate from the basic priority rules."  Czyzewski v. Jevic Holding Corp., 137 S. Ct. 973, 978 (2017).  Here, the Dismissal Order does not provide for the distribution of estate property except by way of the abandonment of the Unsold Collateral as addressed below, which is consistent with applicable priorities.

**D.    Abandonment of the Wonder Vision Claims and All Remaining Unsold Collateral**

31.    Section 554(a) of the Bankruptcy Code allows a trustee or debtor in possession to abandon and destroy its interest in property of the estate if the property is (i) "burdensome to the estate" or (ii) "of inconsequential value and benefit to the estate."  11 U.S.C. § 554(a); see also Midlantic National Bank v. New Jersey Department of Environmental Protection, 474 U.S. 494, 507 (1986) (noting that a trustee's power to abandon property is broad, subject only to state laws or regulations "reasonably designed to protect the public health or

safety from identifiable hazards").

32.     The Debtors submit that continued prosecution of the Wonder Vision Claims is not possible given a lack of funding to the estates, and in any case, would be burdensome given that the estates are not expected to realize any proceeds of such claims.  The expected proceeds of the Wonder Vision Claims are encumbered by the liens of the Collateral Agent.  Therefore, abandonment of the Wonder Vision Claims to the Collateral Agent or such other party as the Collateral Agent designates is appropriate.

**E.      Approval of Professional Fees**

33.     In connection with winding down the Debtors' estates and the dismissal of these Chapter 11 Cases, and notwithstanding any provisions to the contrary in the Interim Compensation Order, the Debtors intend to seek the Court's approval of the final payment of professional fees and expenses incurred by professionals on behalf of the Debtors' estates throughout the these Chapter 11 Cases.  Courts in this jurisdiction have routinely approved final professional fees in the context of dismissals. See, e.g., In re Real Industry, Inc., No. 17-12464 (KJC) (Bankr. D. Del. June 27, 2018); In re Sunco Liquidation, Inc., No. 17-10561 (KG) (Bankr. D. Del. Aug. 18, 2017); In re Old Towing Co., No. 17-10249 (LSS) (Bankr. D. Del. May 30, 2017); In re TAH Windown, Inc., No. 16-11599 (MFW) (Bankr. D. Del. Jan. 13, 2017).

34.     The Debtors' professionals intend to file final fee applications to be considered by the Court at, prior to, or following the hearing on this Motion.  The Debtors request that the Court retain jurisdiction to consider and rule on any final fee applications following entry of the Dismissal Order, to the extent necessary.

**F.**    <u>**Termination of the Claims and Noticing Services**</u>

35.    The Debtors also request entry of an order terminating the claims and noticing services (the "<u>Claims and Noticing Services</u>") provided by Omni pursuant to the *Order Authorizing Retention and Appointment of Omni Management Group, Inc. as Claims and Noticing Agent Under 28 U.S.C. § 156(c), 11 U.S.C. § 105(a) and LBR 2002-1(f)* [Docket No. 34] (the "<u>Omni Retention Order</u>").  Upon termination of the Claims and Noticing Services, and except as otherwise provided herein, Omni shall have no further obligations under the Omni Retention Order to the Court, the Debtors, the Debtors' estates, or any other party in interest with respect to the Claims and Noticing Services in these Chapter 11 Cases.

36.    Pursuant to Local Rule 2002-1(f)(ix), within 14 days of entry of an order dismissing these Chapter 11 Cases, Omni will (a) forward to the Clerk of the Court an electronic version of all imaged proofs of claim, (b) upload the creditor mailing list into CM/ECF and (c) file a Final Claims Register containing claims asserted in all of the Debtors' cases on the docket of the remaining case (Case No. 18-11142 (CSS)).  Omni also will box and deliver all original proofs of claim to the Philadelphia Federal Records Center, 14470 Townsend Road, Philadelphia, Pennsylvania 19154 and file a completed SF-135 Form indicating the accession and location numbers of the archived claims.  In addition, pursuant to Local Rule 2002-1(f)(xii), Omni will file a Final Claims Register on the docket of each of the Debtors' cases containing only the claims asserted in that specific case.

DOCS_DE:220441.8

**G.**    **All Prior Orders, Settlements, Rulings, and Judgments Should Remain Binding and Continue to Be in Full Force and Effect**

37.    The dismissal of a chapter 11 case ordinarily provides for what is, in effect, a restoration of the prepetition status quo. *See* 11 U.S.C. § 349(b). A bankruptcy court may, however, "for cause, order[] otherwise . . . ." *Id.* Courts in this jurisdiction have regularly allowed orders, including those approving releases and settlements, to be given continued effect after a dismissal, notwithstanding § 349 of the Bankruptcy Code. See*, e.g.*, In re Sunco Liquidation, Inc., No. 17-10561 (KG) (Bankr. D. Del. Nov. 6, 2017) (giving continued effect to orders entered throughout the pendency of the chapter 11 cases); In re Old Towing Co., Case No. 17-10249 (LSS) (Bankr. D. Del. May 30, 2017) (giving continued effect to 363 sale order and any releases, injunctions and successor liability provisions provided for in such sale); In re TAH Window, Inc., Case No. 16-11599 (MFW) (Bankr. D. Del. Jan. 13, 2017) (giving orders, releases, and injunctions continuing effect); In re City Sports, Inc., Case No. 15-12054 (KG) (Bankr. D. Del. Mar. 4, 2016) (giving continued effect to previously entered orders); In re Coach Am Grp. Holdings Corp., Case No. 12-10010 (KG) (Bankr. D. Del. May 31, 2013) (same); In re ICL Holding Co., Case No. 12-13319 (KG) (Bankr. D. Del. Sept. 10, 2014) (same).

38.    Here, numerous parties in interest, including the Purchaser and the Debtors, have relied upon orders entered by the Court in connection with these cases. Specifically, the Sale Order approved the sale of substantially all of the Debtors' assets. Similarly, the finality of the releases, stipulations, and protections contained in the Final DIP Order were necessary to induce the DIP lenders to extend postpetition financing. As a practical

18

matter, the transactions consummated in reliance upon these orders are indefeasible and impossible to unwind.

39.    Given these circumstances, the Debtors submit that cause exists to allow all prior orders, releases, stipulations, settlements, rulings, and judgements entered by the Court in these cases to be given continued effect, notwithstanding dismissal of these cases.

**H.    The Limited Exculpation Provisions in the Dismissal Order Should Be Approved**

40.    As part of the Dismissal Order, the Debtors request the following limited exculpation provision:

> From and after the entry of this Order, the Debtors, and any of the Debtors' respective directors, officers, employees, attorneys, consultants and advisors who served during any portion of these chapter 11 cases, and any other professionals retained in these cases (each an "Exculpated Party" and collectively, the "Exculpated Parties"), shall be exculpated from any liability for any act taken or omitted to be taken in good faith through the date of entry of this Order for any actions in connection with or related to the Debtors or the Debtors' chapter 11 cases, except for any claim or cause of action arising from the fraud, gross negligence, or willful misconduct of such party.

41.    Limited exculpation, such as that sought by the Debtors in the Dismissal Order, is appropriate when it is fair, necessary, and supported by the factual record. See, e.g., Gillman v. Cont'l Airlines (In re Cont'l Airlines), 203 F.3d 203, 214 (3d Cir. 2000). Recently, in In re Real Industry, Inc., No. 17-12464 (KJC) (Bankr. D. Del. June 27, 2018), Judge Carey approved limited exculpations similar to the exculpations sought here. In approving the exculpations, Judge Carey found it important that notice of the motion was served on the entire creditor matrix, which was more than 9,000 parties, that there was no hint of wrongdoing by any of the proposed parties to be exculpated, and that the exculpated parties acted appropriately in

maximizing the value of the assets of the estate.  See Transcript of Real Industry, Inc., et al., No. 17-12464 (KJC) (Bankr. D. Del. June 27, 2018), attached hereto as **Exhibit B**.

42.    The Debtors, their officers, directors, and employees, and other estate professionals and fiduciaries worked diligently throughout the Chapter 11 Cases to consummate the Sale of substantially all of the Debtors' assets.  As a result of their efforts, the Exculpated Parties have preserved and maintained valuable business and customer relationships, held a successful auction increasing the purchase price by approximately $3,875,000, caused the Purchaser to assume a substantial portion of the Debtors' liabilities, including certain administrative and general unsecured trade claims and employee vacation, sick, and other paid time off obligations, and provided the Debtors with the ability to wind-down their estates in an orderly and efficient manner.  There is no evidence of wrongdoing by any of the Exculpated Parties.  Further, all creditors and other parties in interest in these Chapter 11 Cases will be provided with notice of, and an opportunity to object to, the proposed exculpation.

43.    In consideration of the efforts of the Exculpated Parties, the Debtors seek limited exculpations, which are narrowly drafted to include only estate fiduciaries.  In re Washington Mut. Inc., 442 B.R. 314, 322, 350 (Bankr. D. Del. 2011).  The exculpation provisions will protect the Exculpated Parties from liability for any actions taken (or omitted to be taken) in good faith, relating to or in connection with these Chapter 11 Cases.  Further, the proposed exculpation provisions expressly exclude liability for any acts of gross negligence or willful misconduct on the part of the Exculpated Parties. Courts in this jurisdiction have approved similar relief in the past. See, e.g., In re Real Industry, Inc., No. 17-12464 (KJC)

(Bankr. D. Del. June 27, 2018) (approving form of dismissal order containing limited exculpations); In re Golfsmith Int'l Holdings, Inc., No. 16-12033 (LSS) (Bankr. D. Del. Jan. 24, 2018) (approving form of dismissal order containing broad releases); In re City Sports, Inc., No. 15-12054 (KG) (Bankr. D. Del. Mar. 4, 2016) (approving broad exculpation provision); In re Coach Am Grp. Holdings Corp., No. 12-10010 (KG) (Bankr. D. Del. May 31, 2013) (approving consensual releases and broad exculpation). The Debtors therefore submit that the limited exculpation provisions in the Dismissal Order are appropriate, and request that they be approved.

### Notice

44.    The Debtors will provide notice of this Motion to the following parties, or their counsel, if known: (a) the Office of the United States Trustee; (b) the Debtors' largest 20 creditors; (c) the Debtors' prepetition and postpetition lenders; (d) any party that has requested notice pursuant to Bankruptcy Rule 2002 at the time of noticing; (e) all parties listed on the Debtors' consolidated creditor matrix, and (f) all of the Debtors' equity holders. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

**No Prior Request**

45.     No previous motion or application for the relief sought herein has been

made to this or any other court.

Dated:  September 18, 2018                    PACHULSKI STANG ZIEHL & JONES LLP

                                             */s/ James E. O'Neill*
                                             Ira D. Kharasch (CA Bar No. 109084)
                                             Maxim B. Litvak (CA Bar No. 215852)
                                             James E. O'Neill (Bar No. 4042)
                                             919 North Market Street, 17th Floor
                                             P.O. Box 8705
                                             Wilmington, Delaware  19899-8705 (Courier 19801)
                                             Telephone:  302-652-4100
                                             Facsimile:  302-652-4400
                                             Email:     ikharasch@pszjlaw.com
                                                        mlitvak@pszjlaw.com
                                                        jo'neill@pszjlaw.com

                                             Counsel for Debtors and Debtors in Possession