**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

------------------------------------------------------- x
                                                        :
In re:                                                  :    Chapter 11
                                                        :
DB HOLDINGS LIQUIDATION, INC. (f/k/a                    :    Case No. 16-12435 (CSS)
DIRECTBUY HOLDINGS, INC.), *et al.*,[1]                 :
                                                        :    Jointly Administered
          Debtors.                                      :
                                                        :    **Hearing Date: July 18, 2017 at 10:00 a.m.**
                                                        :    **Obj. Deadline: July 5, 2017 at 4:00 p.m.**
------------------------------------------------------- x

**DEBTORS' MOTION FOR ENTRY OF AN ORDER DISMISSING THE
DEBTORS' CHAPTER 11 CASES AND GRANTING RELATED RELIEF**

The debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors") hereby submit this motion (the "Motion") for the entry of an order substantially in the form attached hereto as **Exhibit A** (the "Initial Order") (A) dismissing the Debtors' Chapter 11 cases and (B) granting related relief, including, without limitation, (i) authorizing, but not directing, the Debtors to abandon and destroy any and all of the books and records maintained by the Debtors that were not sold to CSC (defined below), including, but not limited to, (a) accounting documents, (b) bank documents, (c) corporate governance documents, (d) documents related to contracts, leases and other contractual arrangements of the Debtors, (e) insurance documents, (f) human resources and other related employment documents, (g) documents related to these Chapter 11 cases, and (h) any and all electronic documents maintained by the Debtors (collectively, the "Books and Records"), (ii) approving procedures for filing and approving final fee applications and providing for payment of approved fees and (iii) authorizing the Debtors to

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: DB Holdings Liquidation, Inc. (3621); Consumer Liquidation, Inc. (6335); DB Liquidation, Inc. (5059); BF Liquidation, Inc. (8776); UDB Liquidation, Inc. (6010); Trading Liquidation, Inc. (4388); NMC Liquidation, Inc. (8765); and Canada DB Liquidation, Inc. (6435).

take steps to effect a dissolution as set forth in the Final Dismissal Order (as defined below). In support of the Motion, the Debtors respectfully represent as follows:

## I.    PRELIMINARY STATEMENT[2]

1.      The Debtors commenced these Chapter 11 Cases to preserve their business as a going concern and maximize the value of their assets through a sale transaction.  The Debtors achieved that goal and, in February, 2017, closed a sale of substantially all of their business assets.

2.      After the closing, the Debtors, Committee and Pre-Petition Secured Parties entered into a settlement that enabled the Debtors to pay administrative expense claims not assumed in connection with the sale and otherwise administer these Chapter 11 Cases.  That settlement positioned the Debtors to exit from Chapter 11.

3.      As this juncture, the Debtors and the Committee have discussed the most efficient way to conclude the Chapter 11 Cases.  After carefully considering alternatives, and given the completion of the sale and the lack of any remaining assets to monetize, the Debtors have decided that dismissal is the most effective way to proceed as they are unable to propose and confirm a plan.  In any event, confirmation of a plan of liquidation will take too long, be too expensive and substantially increase administrative costs.  Conversion of these cases to Chapter 7 merely will add another layer of administrative expenses without any benefit to the Debtors' unsecured creditors.  Based on these circumstances, dismissal makes the most practical and economic sense.

---

[2] Capitalized terms used in this Preliminary Statement have the meaning ascribed to them elsewhere in the Motion.

54797/0001-14419720v6

## II.    JURISDICTION

4.    The Court has jurisdiction to consider this Motion under 28 U.S.C. § § 157 and 1334, and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware* dated February 29, 2012.  This is a core proceeding under 28 U.S.C. § 157(b)(2) and, pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, the Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

5.    The statutory predicates for the relief requested herein are sections 105(a), 305, 349, 363 554 and 1112 of Title 11 of the United States Code (as amended, the "Bankruptcy Code", Rules 1017, 2002 and 6007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 1017-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

## III.    BACKGROUND

### A.    General Background

6.    On November 1, 2016 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases").

7.    The Debtors managed and operated their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107 and 1108 until the closing on the Sale (as defined below).  On November 15, 2016, the Office of the United States Trustee ("UST") appointed the Official Committee of Unsecured Creditors (the "Committee") pursuant to section 1102 of the Bankruptcy Code [Docket No. 77].

8.     Additional information about the Debtors' businesses and the events leading up to the Petition Date can be found in the Declaration of Michael P. Bornhorst in Support of Debtors' Chapter 11 Petitions and First Day Relief [Docket No. 14], which is incorporated herein by reference.

**B.    Pre-Petition Secured Debt**

9.     Pursuant to a Senior Secured Notes Indenture, dated as of January 26, 2011 (the "Original Indenture"), among DB Holdings Liquidation, Inc. (f/k/a DirectBuy Holdings, Inc.), as issuer ("Holdings") and each of the Debtors as guarantors (collectively, the "Guarantors"), and The Bank of New York Mellon Trust Company, N.A., as trustee and collateral agent, Holdings issued 12% Senior Secured Notes due 2017 in the aggregate principal amount of $335 million (the "Original Senior Secured Notes").

10.     On or about August 1, 2012, Holdings entered into an Exchange Agreement (the "Exchange Agreement"), as amended by Amendment No. 1 dated September 28, 2012, with (i) certain holders of the Original Senior Secured Notes (the "Exchanging Holders"), (ii) Trivest Partners IV, L.P. for itself and as manager under that certain Management Agreement dated November 30, 2007 ("Trivest Manager"), and (iii) DirectBuy Investors, L.P., DirectBuy Investors-A, L.P., and DirectBuy Investors-B, L.P. (collectively, "Trivest Equity" and, together with Trivest Manager, collectively, the "Trivest Parties"). Pursuant to the Exchange Agreement, Holdings, the Exchanging Holders and the Trivest Parties completed a restructuring of Holdings' debt and equity on November 5, 2012, whereby, among other things, the Original Senior Secured Notes in the principal amount of $324.7 million were exchanged for (i) 100% of the equity of Holdings and (ii) $100 million of 12% PIK Toggle Notes due November 5, 2019 (the "Pre-Petition Notes"). The Pre-Petition Notes were authorized and issued pursuant to a Senior

4

Secured Toggle Notes Indenture (as amended, restated, supplemented, or otherwise modified, the "Pre-Petition Notes Indenture"), dated November 5, 2012 among Holdings, the Guarantors and U.S. Bank National Association, as trustee and collateral agent (the "Pre-Petition Collateral Agent").

11.    Pursuant to a (i) Security Agreement, dated November 5, 2012, (ii) Grant of Security Interest in Trademarks, and (iii) Third Lien Mortgage, Security Agreement, Assignment of Leases and Rents and Fixture Filing, Holdings and the Guarantors granted the Pre-Petition Collateral Agent, as trustee and collateral agent for the holders of the Pre-Petition Notes (the "Pre-Petition Noteholders"[3] which, together with the Pre-Petition Collateral Agent are collectively referred to as the "Pre-Petition Secured Parties"), a security interest (the "Pre-Petition Liens") in substantially all of their assets, including, without limitation, owned real property, investment property and general intangibles except for (a) leasehold interests, (b) cash and cash equivalents for merchandise deposits, and (c) cash and cash equivalents held on behalf of members (i.e., membership fees) by Holdings or any of the Guarantors (the "Pre-Petition Collateral"). The Pre-Petition Collateral included the pledge of Holdings' shares in Consumer Liquidation, Inc. (f/k/a United Consumer Club, Incorporated) ("UCCI") and a pledge of UCCI's shares in its subsidiaries. Canada DB Liquidation, Inc. (f/k/a UCC of Canada, Inc.), in turn, pledged to the Pre-Petition Collateral Agent 66% of its shares in each of the Canadian subsidiaries.

12.    As of the Petition Date, the Debtors were indebted to the Pre-Petition Secured Parties in the approximate amount of $144,678,183.61.

---

[3] Before the Petition Date, the Prepetition Noteholders formed an Ad Hoc Committee of Prepetition Noteholders (the "Ad Hoc Committee") to represent their interests in the Chapter 11 Cases.

54797/0001-14419720v6

13.     As of the Petition Date, substantially all of the Debtors' cash, including, without limitation, cash and other amounts on deposit or maintained by the Debtors in any United States account (except for all merchandise trust accounts and the membership account in California) and any cash proceeds of the disposition of any Pre-Petition Collateral, constituted cash collateral of the Pre-Petition Secured Parties within the meaning of section 363(a) of the Bankruptcy Code (the "Cash Collateral").

## C.    Sale of the Debtors' Business Assets

14.     On the Petition Date, the Debtors filed a *Motion Pursuant to Sections 105(a), 363 and 365 of the Bankruptcy Code for Orders: (I) (A) Approving "Stalking Horse" Asset Purchase Agreement, (B) Approving Procedures in Connection with the Sale of All or Substantially All of the Debtors' Business Assets, (C) Scheduling the Related Auction and Hearing to Consider Approval of Sale, (D) Approving Procedures Relating to the Assumption of Certain Executory Contracts and Unexpired Leases, (E) Approving the Form and Manner of Notice Thereof, (F) Approving Expense Reimbursement, and (G) Granting Related Relief; and (II) (A) Authorizing the Sale of All or Substantially All of the Debtors' Business Assets Free and Clear of Liens, Claims and Interests, (B) Approving Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto and (C) Granting Related Relief* [Docket No. 18].

15.     On December 1, 2016, the Court entered an order [Docket No. 126] (the "Bidding Procedures Order") that, among other things, established the bidding procedures for the sale of the Debtors' business assets and scheduled an auction and sale hearing. Pursuant to the Bidding Procedures Order, the Debtors determined, in consultation with the Ad Hoc Committee and the Committee, that their Asset Purchase Agreement with CSC Generation, Inc. ("CSC") dated

54797/0001-14419720v6

February 10, 2017 (the "CSC APA") constituted the highest and best offer for the business assets and was the successful bid.

16.     On February 14, 2017, the Court entered the *Order (A)Authorizing the Sale of All or Substantially All of the Debtors' Business Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (B) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto; and (C) Granting Related Relief* [Docket No. 377] (the "Sale Order") approving the sale of substantially all of the Debtors' assets pursuant to the CSC APA.

17.     On February 21, 2017, the sale of the Debtors' business assets to CSC pursuant to the CSC APA (the "Sale") closed.

**D.     The Debtors' Use of Cash Collateral and Settlement with the Pre-Petition Secured Parties**

18.     On the Petition Date, the Debtors filed a *Motion for Interim and Final Order Under 11 U.S.C. §§ 105, 361, 362, 363, 507(b), Fed. R. Bankr. P. 4001, 6004(h), 7062 and 9014 and Del. Bankr. L.R. 4001-2 (I) Authorizing the Debtors to Use Cash Collateral, (II) Granting Adequate Protection to Pre-Petition Secured Parties, and (III) Scheduling Final Hearing Pursuant to Fed. R. Bankr. P. 4001(B)* [Docket No. 13] (the "Cash Collateral Motion").

19.     On November 4, 2016, the Court entered an *Interim Order (I) Authorizing Use of Cash Collateral, (II) Granting Adequate Protection to Secured Parties, (III) Scheduling a Final Hearing, and (IV) Granting Related Relief* [Docket No. 46] (the "Interim Order"). Pursuant to the Interim Order, the Debtors stipulated to the validity of the Prepetition Secured Parties' liens and claims, subject to an investigation by the Committee.

20.     On December 8, 2016, the Committee filed an Objection to the Cash Collateral Motion [Docket No. 167] (the "Committee Objection"). To afford the parties time to resolve the

7

Committee Objection and to allow the sale process to unfold, the Prepetition Secured Parties consented to the further use of cash collateral on an interim basis. In that regard, on January 10, 2017, the Court entered an *Amended and Restated Interim Order (I) Authorizing Use of Cash Collateral, (II) Granting Adequate Protection to Secured Parties, (III) Scheduling a Final Hearing, and (IV) Granting Related Relief* [Docket No. 279].

21.    To resolve the Committee Objection and provide the Debtors with access to the Prepetition Collateral (including Cash Collateral) so that the Debtors could, among other things, pay allowed costs and expenses of operating their business not assumed by CSC and administer these Chapter 11 Cases (collectively, the "Wind Down Expenses"), and in connection with the final hearing on the Cash Collateral Motion, the Debtors, Committee and Prepetition Secured Parties entered into good faith, arm's-length negotiations that resulted in a settlement of all outstanding issues and disputes (the "Settlement"). The Settlement provided for, among other things, payment of $650,000 (the "Notes Funds") to the Prepetition Collateral Agent.    In exchange for the Notes Funds, the Prepetition Secured Parties released their liens on and security interests in the Debtors' assets including, among other things, cash, to allow those funds to be available to satisfy the Wind-Down Expenses. Thus, the Settlement positioned the Debtors to exit from Chapter 11 promptly and efficiently

22.    On March 15, 2017, the Debtors filed their *Motion for an Order Authorizing the Global Compromise and Settlement of Claims By and Among the Debtors, the Official Committee of Unsecured Creditors and the Prepetition Secured Parties and Granting Related Relief* [Docket No. 473]. On April 5, 2017, the Court entered an *Order (A) (I) Authorizing Final Use of Cash Collateral, (II) Granting Adequate Protection to Secured Parties, and (III) Granting*

*Related Relief, and (B) Approving Compromise and Settlement of Secured Party Claims* [Docket No. 516].

## E.    **The Claims Process**

23.    On December 8, 2016, the Court entered an *Order Granting Debtors' Motion for Order Pursuant to Sections 105(a), 501, 502, 503 and 1111(a) of the Bankruptcy Code, Bankruptcy Rules 2002 and 3003(c), and Local Rules 1009-2 and 2002-1(e), (I) Establishing Bar Dates for Filing Claims Against the Debtors and (II) Approving Form and Manner of Notice Thereof* [Docket No. 178] (the "Bar Date Order").  The Bar Date Order established February 6, 2017 at 5:00 p.m. (prevailing Eastern Time) as the deadline for a claimant to file a proof of claim against the Debtors for claims that arose (or are deemed to have arisen) on or before the Petition Date, including claims arising under Section 503(b)(9) of the Bankruptcy Code.  The Bar Date Order also established a deadline for government proofs of claim.

24.    Claims in the Chapter 11 cases are recorded on the official claims registry maintained by Prime Clerk, LLC, the Debtors' court-appointed claims agent.

25.    The Debtors reviewed and reconciled the claims asserted against them as administrative claims pursuant to Section 503(b)(9) of the Bankruptcy Code.  Toward that end, on April 7, 2017, the Debtors filed their *First Omnibus (Substantive) Objection to Section 503(b)(9) Claims Pursuant to Section 502 of the Bankruptcy Code, Bankruptcy Rule 3007 and Local Rule 3007-1* [Docket No. 521] (the "Claim Objection").  The Claim Objection sought to reduce or disallow claims asserted against the Debtors pursuant to section 503(b)(9) of the Bankruptcy Code.  On May 4, 2017, the Court entered an order granting the Claim Objection with the exception of the claim of MasterBrand Cabinets, Inc. ("MasterBrand") [Docket No. 578].

9

26.    Following extensive settlement discussions in connection with the Claim
Objection, the Debtors and MasterBrand entered into a *Stipulation to Allow Proof of Claim
Number 470 of MasterBrand Cabinets, Inc. and Provide for Payment Thereof* [Docket No. 586]
(the "MasterBrand Stipulation"), which the Court approved by Order dated May 10, 2017
[Docket No. 588].  Pursuant to the MasterBrand Stipulation, the Debtors agreed, among other
things, to allow MasterBrand's claim in the amount of $1,111,999.30 as an administrative
expense claim pursuant to Section 503(b)(9) of the Bankruptcy Code (the "Allowed 503(b)(9)
Claim").  Per the MasterBrand Stipulation, the Allowed 503(b)(9) Claim will be paid in two
tranches.  First, in full and final satisfaction of any Assumed Liabilities (as defined in the CSC
APA) with respect to MasterBrand under the CSC APA, CSC paid MasterBrand the sum of
$100,000 in accordance with the CSC APA.  Second, any excess funds in the Debtors' estates
after payment of all allowed administrative expense claims not assumed by CSC under the CSC
APA, including allowed claims of all professionals in the Chapter 11 Cases, to the extent
available, will be paid by the Debtors to MasterBrand within five (5) business days after the
Court enters final and non-appealable orders allowing the final fee applications of all of the
professionals in the Chapter 11 Cases and applied to the remaining balance of the Allowed
503(b)(9) Claim.

27.    The Debtors do not intend to file any additional claim objections.

F.    **Payment of Administrative Expense Claims**

28.    After the closing of the Sale, the Debtors diligently worked to wind down their
estates.  In that regard, the Debtors have issued payment for all known post-petition expenses
and sales taxes that were incurred in the ordinary course of their business and not assumed by
CSC under the CSC APA.

29.    In addition, pursuant to the CSC APA, CSC assumed, among other things, all amounts payable with respect to claims pursuant to Section 503(b)(9) of the Bankruptcy Code up to a cap of $3,500,000 (the "503(b)(9) Cap"). Further, pursuant to the CSC APA, if the total amount of allowed 503(b)(9) claims are reduced to an amount less that the 503(b)(9) Cap, the Debtors are entitled to payment from CSC of the 503(b)(9) Differential (as defined in the CSC APA) within ninety (90) days of the sale closing. In accordance with the CSC APA, CSC has paid the Debtors $751,037.00 on account of the 503(b)(9) Differential.

30.    The only known allowed administrative liabilities that remain to be satisfied are professional fees, outstanding quarterly fees to the UST and any excess cash to be paid to MasterBrand in accordance with the MasterBrand Stipulation.

## G.    Komodo Appeals

31.    Debtor DB Liquidation, Inc. (f/k/a DirectBuy, Inc.) was party to several contracts (the "Komodo Contracts") with Komodo Cloud, LLC ("Komodo"), which provided the Debtors' cloud network. Pursuant to the CSC APA and the Sale Order, the Komodo Contracts were placed on the list of "Specified Contracts," providing CSC with 90 days following the Sale to decide whether to cause the Debtors to assume or reject the Komodo Contracts.

32.    Almost immediately after the Sale, disputes between CSC and Komodo arose, leading to the filing by the Debtors of an emergency motion to compel Komodo to comply with the Komodo Contracts [Docket No. 406] (the "Emergency Motion"). The Debtors and CSC subsequently sought to withdraw the Emergency Motion [Docket No. 494] to which Komodo objected [Docket No. 550] on the grounds that the withdrawal should be ordered with prejudice and all of Komodo's fees related to the Emergency Motion should be paid by CSC and/or the Debtors. On May 10, 2017, 2017, the Bankruptcy Court entered an order allowing withdrawal of the Emergency Motion with prejudice and denying Komodo's request for fees [Docket No. 587]

11

(the "Withdrawal Order"). Komodo filed a notice of appeal from the Withdrawal Order on May 24, 2017 [Docket No. 615] (the "First Komodo Appeal").

33.     Additionally, Komodo filed a motion objecting to the process by which its contract was identified as a "Specified Contract" and essentially seeking to compel the Debtors to assume the Komodo Contracts or be estopped from rejecting those contracts [Docket No. 532] (the "Komodo Motion to Compel"). On May 10, 2017, the Bankruptcy Court denied the Komodo Motion to Compel [Docket No. 589]. Komodo filed a notice of appeal from that order as well on May 24, 2017 [Docket No. 616] (the "Second Komodo Appeal" and together with the First Komodo Appeal, the "Komodo Appeals").

34.     On April 30, 2017, the Debtors filed a notice of rejection of the Komodo Contracts, seeking authority to reject the contracts as of April 30, 2017 [Docket No. 563] to which Komodo objected [Docket No. 590]. On May 25, 2017, the Bankruptcy Court entered an order authorizing rejection of the Komodo Contracts as of May 1, 2017 [Docket No. 631] (the "Komodo Rejection Order"). Komodo did not timely file an appeal of the Komodo Rejection Order by June 8, 2017.

35.     On June 6, 2017, Komodo filed an application for the payment of $4,255.33 as an administrative expense because the Komodo Contracts were not deemed rejected until May 1, 2017. The Debtors do not object to that application.

36.     Komodo has not timely filed its designation of the record or its statement of issues on appeal as required under Federal Rule of Bankruptcy Procedure 8009(a)(1)(A) in either of the Komodo Appeals and it is the Debtors' position that Komodo has abandoned the Komodo Appeals. Furthermore, Komodo's failure to timely appeal from the Komodo Rejection Order renders the Second Komodo Appeal moot.

54797/0001-14419720v6

## IV.    RELIEF REQUESTED AND BASIS THEREFOR

37.    By this Motion, the Debtors request entry of the Initial Order immediately and the Final Dismissal Order (defined below) upon the filing of the Certification (defined below) that collectively (A) dismiss the Debtors' Chapter 11 Cases and (B) grant related relief, including, without limitation, (i) authorizing, but not directing, the Debtors to abandon and destroy any and all of the Books and Records, (ii) scheduling a hearing with respect to, and approving procedures for filing, final fee applications, and (iii) authorizing the Debtors to take the steps necessary to effect a dissolution as set forth in the Final Dismissal Order.  The Debtors submit that there is ample authority under the Bankruptcy Code and case law to grant the Motion and that the requested relief is justified and warranted under the circumstances of these Chapter 11 Cases.

### A.    Dismissal of the Chapter 11 Cases is Warranted Under Section 1112(b) of the Bankruptcy Code

38.    Under Section 1112(b) of the Bankruptcy Code, a court "shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, if the movant establishes cause." 11 U.S.C. § 1112(b); *Czyzewski v. Jevic Holding Corp.*, 137 S.Ct. 973, 978 (2017) (recognizing that a bankruptcy court may dismiss a Chapter 11 case under 11 U.S.C. § 1112(b)); *In re Albany Partners, Ltd.*, 749 F.2d 670, 674 (11th Cir. 1984); *In re Blunt*, 236 B.R. 861, 864 (Bankr. M.D. Fla. 1999).  The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 changed the statutory language with respect to conversion and dismissal from permissive to mandatory. *See* H.R. Rep. 109-31 (1), 2005 U.S.C.C.A.N. 88, 94 (stating that the Act "mandate[s] that the court convert or dismiss a chapter 11 case, whichever is in the best interests of creditors and the estate, if the movant establishes cause, absent unusual circumstances"); *see also In re Gateway Access Solutions, Inc.*, 374 B.R. 556 (Bankr. M.D. Pa. 2007) (stating that the amendments to

13

section 1112 limit the court's discretion to refuse to dismiss or convert a chapter 11 upon a finding of cause); *accord In re TCR of Denver, LLC*, 338 B.R. 494, 498 (Bankr. D. Colo. 2006) ("Congress has purposefully limited the role of this Court in deciding issues of conversion or dismissal such that this Court has no choice, and no discretion in that it 'shall' dismiss or convert a case under Chapter 11 if the elements for 'cause' are shown under 11 U.S.C. § 1112(b)(4)").

39.     The amendments to Section 1112 of the Bankruptcy Code limit the Court's discretion to refuse to dismiss or convert a chapter 11 case upon a finding of cause. *In re 3 Ram, Inc.*, 343 B.R. 113, 119 (Bankr. E.D. Pa. 2006) ("Under new § 1112 when cause is found, the court shall dismiss or convert unless special circumstances exist that establish that the requested conversion or dismissal is not in the interests of creditors and the estate"); *see also In re Broad Creek Edgewater, LP*, 371 B.R. 752, 759 (Bankr. D. S.C. 2007).

40.     A determination of cause is made by the court on a case-by-case basis. *In re Albany Partners*, 749 F.2d at 674.  Section 1112(b) of the Bankruptcy Code provides a non-exhaustive list of sixteen factors that may amount to "cause" for dismissal.  *See* 11 U.S.C. §1112(b)(4)(A)-(P); *Frieouf v. U.S.*, 938 F.2d 1099, 1102 (10th Cir. 1991) (stating that section 1112(b) of the Bankruptcy Code's list is non-exhaustive).  One such ground that is particularly relevant to the Debtors' situation is where a party-in-interest shows that there is a "substantial or continuing loss or diminution of the estate and the absence of a reasonable likelihood of rehabilitation."  11 U.S.C. § 1112(b)(4)(A).  *See also In re Midwest Props. of Shawano, LLC*, 442 B.R. 278, 286 (Bankr. D.Del. 2010) (dismissing Chapter 11 case pursuant to Section 1112(b)(4)(A) as being in "the best interests of creditors and the estate"); *In re DCNC v. Carolina I, LLC*, 407, B.R. 651, 665 (Bankr. E.D. Pa 2009) ("inability to effectuate a plan, by itself, provides cause for dismissal or conversion of a Chapter 11 case").

14

41.     To demonstrate a continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation, a debtor must establish: (i) that there has been a diminution of value of the estate; and (ii) the debtor does not have a "reasonable likelihood of rehabilitation." *See e.g., In re Citi-Toledo Partners*, 170 B.R. 602, 606 (Bankr. N.D. Ohio 1994) (citing *In re Photo Promotion Associates, Inc.*, 47 B.R. 454, 458 (Bankr. S.D.N.Y. 1985)). Under the two-fold inquiry, the Debtors must first demonstrate that there has been a diminution of value of their estates. *See, e.g., In re Citi-Toledo Partners*, 170 B.R. at 606 (finding that accumulation of real estate taxes impaired the value of the estate). Second, the Debtors must demonstrate that they have no "reasonable likelihood of rehabilitation." *See, e.g., Clarkson v. Cooke Sales And Service Co. (In re Clarkson)*, 767 F.2d 417, 420 (8th Cir. 1985) (dismissal warranted where "the absence of financial data and certain sources of income for the [debtors] indicate[d] the absence of a reasonable likelihood of rehabilitation").

42.     Here, the Debtors satisfy the two-fold inquiry. First, by continuing in bankruptcy, the Debtors would incur additional administrative expenses beyond their ability to pay. Second, it is simply not possible for the Debtors to confirm a chapter 11 plan because they have liquidated all their assets in connection with the Sale. The Debtors no longer conduct any business operations and have no remaining assets that could be used to satisfy the claims of any class of creditors in accordance with Section 1129(a) of the Bankruptcy Code.[4] The Debtors, therefore, have met their burden of proof to demonstrate that cause exists to dismiss these Chapter 11 Cases under Section 1112(b).

---

[4] While no longer an enumerated ground under amended Section 1112 of the Bankruptcy Code, dismissal of a Chapter 11 case is appropriate where the court finds that confirmation of a feasible plan is not possible. *In re 3 Ram*, 343 B.R. at 117-118.

54797/0001-14419720v6

43.    Once a court determines that cause exists to dismiss a chapter 11 case, the court must also evaluate whether dismissal is in the best interests of the estate and creditors. *See In re Superior Sliding & Window, Inc.*, 14 F.3d 240, 243 (4th Cir. 1994); *In re Mazzocone*, 183 B.R. 402, 411 (Bankr. E.D. Pa. 1995), *aff'd* 200 B.R. 568 (E.D. Pa. 1996); *In re Warner*, 83 B.R. 807, 809 (Bankr. M.D. Fla. 1988).  A variety of factors demonstrates that it is in the best interests of the Debtors' estates and creditors to dismiss these Chapter 11 Cases.

44.    Among other things, a dismissal of the Debtors' Chapter 11 Cases meets the best interests of creditors test where a debtor has nothing left to reorganize and the debtor's assets are fixed and liquidated. *See In re BTS, Inc.*, 247 B.R. 301, 310 (Bankr. N.D. Okla. 2000); *In re Camden Ordinance Mfg. Co. of Ark., Inc.*, 245 B.R. 794, 799 (E.D. Pa. 2000) (finding that a reorganization to salvage a business which ceased doing business was not feasible); *In re Brogon Inv. Co.*, 22 B.R. 546, 549 (Bankr. N.D. Ga. 1982) (dismissing chapter 11 case in part where there was "simply nothing to reorganize" and thus no reason to continue the reorganization); *In re Gonic Realty Trust*, 909 F.2d 624, 627 (1st Cir. 1990) ("[w]ith no business left to reorganize, Chapter 11 proceedings were not serving the purpose of rehabilitating the debtor's business").

45.    The best interests of creditors test is also met where an interested party, other than the debtor, feels that dismissal is a proper disposition of the case. *See Camden Ordinance, 245 B.R. at 798; In re Mazzocone*, 183 B.R. at 414 (Factors weighed more heavily in favor of dismissal of chapter 11 case rather than conversion to chapter 7, where debtor and United States Trustee both favored dismissal).  Here, the Committee agrees with and supports dismissal of the Cases.

46.    In light of these factors, ample cause exists for, and the interests of the creditors and the Debtors would be better served by, dismissal of the Debtors' Chapter 11 Cases.  As set

54797/0001-14419720v6

forth above, the Debtors have sold substantially all of their assets pursuant to the Sale. There are no proceeds of sale left, or other assets remaining, to distribute to creditors other than for payment of allowed professional fees, fees to the UST and any excess funds, if available, to MasterBrand in accordance with the MasterBrand Stipulation.[5]  A plan would only serve to increase administrative expenses, without any ability to pay.  Additionally, conversion to chapter 7 would impose additional administrative costs with no corresponding benefit to the Debtors' creditors or their estates.  Thus, in consultation with the Committee, the Debtors believe that dismissal is the best means to conclude these Chapter 11 Cases.

47.    Numerous courts, both in this Circuit and throughout the country, have approved orderly dismissals under circumstances similar to the Debtors' Chapter 11 Cases, where the debtor lacks the requisite financial ability to confirm a chapter 11 plan and/or where the costs associated with plan confirmation would eliminate the possibility of a meaningful creditor recovery.  *See e.g., In re Bellmont Rock Holdings, LLC*, No. 13-10590 (CSS) (Bankr. D. Del. Sept. 10, 2014) [Docket No. 190]; *In re G.I. Joe's Holding Corp.*, No. 09-10713 (KG) (Bankr. D. Del. Mar. 10, 2011) [Docket No. 753]; *In re CFM US. Corp.*, Case No. 08-10668 (KJC) (Bankr. D. Del. Feb. 1, 2010) [Docket No. 1282]; *In re Foamex Int'l*, Case No. 09-10560 (KJC) (Bankr. D. Del. Jan. 20, 2010) [Docket No. 761].

**B.**    **Dismissal of these Chapter 11 Cases is Warranted Under Section 305 of the Bankruptcy Code**

48.    Alternatively, cause exists to dismiss these Chapter 11 Cases pursuant to Section 305(a) of the Bankruptcy Code, which provides, in relevant part:

---

[5] The Debtors' request to dismiss the Chapter 11 Cases does not violate the recent United States Supreme Court decision in <u>Czyzewski v. Jevic Holding Corp.</u>, 137 S.Ct. 973 (2017) as the Motion does not seek to make distributions to creditors other than for professional fees and on account of the Masterbrand Stipulation.  The proposed distribution of funds to such administrative creditors does not violate the absolute priority rule.

54797/0001-14419720v6

(a) The court, after notice and a hearing, may dismiss a case under this title, or may suspend all proceedings in a case under this title, at any time if —

(1) the interests of creditors and the debtor would be better served by such dismissal or suspension . . . .

11 U.S.C. § 305(a)(1).

49.     Dismissal pursuant to Section 305(a) is appropriate where the court finds that both creditors and the debtor would be better served by dismissal. *In re Naartjie Custom Kids, Inc.*, 534 B.R. 416, 442 (Bankr. D. Utah 2015) ("The language of § 305(a) is plain: if dismissal of a case, no matter the chapter, would better serve the interests of creditors and the debtor, then the case may be dismissed at any time, whether a plan, if required, has been confirmed or not"); *In re AMC Investors, LLC*, 406 B.R. 478, 487-88 (Bankr. D. Del. 2009).   Many factors are considered when determining the best interests of creditors and the debtor, including (i) the economy and efficiency of administration, (ii) whether federal proceedings are necessary to reach a just and equitable solution, (iii) whether there is an alternative means of achieving an equitable distribution of assets, and (iv) whether the debtor and the creditors are able to work out a less expensive out-of-court arrangement which better serves all interests in the case. *In re AMC Investors*, 406 B.R. at 488; *see Naartjie*, 534 B.R. at 425 ("[A] bankruptcy court is not bound by a prescriptive template; it may consider any factors it deems relevant to the determination of whether it is in the best interests of the parties to the suit to seek dismissal"). Dismissal under Section 305(a) of the Bankruptcy Code is determined on a case-by-case basis and rests in the sound discretion of the bankruptcy court. *Naartjie*, 534 B.R. at 425 ("Not all factors are given the same weight, and the inquiry is made on a case-by-case basis"); *In re Sky Grp. Int'l*, 108 B.R. 86, 91 (Bankr. W.D. Pa. 1989).

54797/0001-14419720v6

50.     Dismissal of these Chapter 11 Cases is warranted under Section 305(a) for the same reasons that "cause" exists to dismiss these Chapter 11 Cases pursuant to Section 1112(b) of the Bankruptcy Code — dismissing the Chapter 11 Cases will result in the efficient administration of the Debtors' estates and represents the lease expensive and most equitable alternative for concluding these Chapter 11 Cases.   Indeed, courts across the country have approved dismissals similar to that proposed by this Motion under Section 305(a) of the Bankruptcy Code.  *See e.g., In re Naartjie Custom Kids, Inc.*, 534 B.R. at 425 ("[T]here is no dispute that the economy and efficiency of administration would be better served through a structured dismissal [because] [t]he Debtor has sold substantially all of its assets, and the Court approved the Settlement Agreement, which lays out the structure of distribution."); *In re Bellmont Rock Holdings, LLC*, No. 13-10590 (CSS) (Bankr. D. Del. Sept. 10, 2014) (dismissing case pursuant to Sections 1112 and 305(a) of the Bankruptcy Code) [Docket No. 190]; *In re PJComn Acquisition Corp.*, No. 11-29380 (RAG) (Bankr. D. Md. June 18, 2014) (entering consent order dismissing case pursuant to Sections 105(a), 305(a), 349, and 1112(b) of the Bankruptcy Code) [Docket No. 558]; *In re Coach Am. Grp. Holdings Corp.*, No. 12-10010 (KG) (Bankr. D. Del. May 31, 2013) (dismissing case pursuant to Section 305(a) of the Bankruptcy Code) [Docket No. 1568]; *In re TSIC, Inc. f/k/a Sharper Image Corp.*, No. 08-10322 (KG) (Bankr. D. Del. Dec. 27, 2012) (dismissing case pursuant to Sections 1112(b) and 305(a) of the Bankruptcy Code) [Docket No. 2541]; *In re Gas City, Ltd.*, No. 10-47879 (ERW) (Bankr. N.D. Ill. Apr. 25, 2012) (dismissing case pursuant to Sections 1112(b) and 305(a) of the Bankruptcy Code) [Docket No. 1307]; *In re G.I. Joe's Holding Corp.*, No. 09-10713 (Bankr D. Del. Mar. 10, 2011) (dismissing case pursuant to Sections 1112(b) and 305(a) of the Bankruptcy Code)

54797/0001-14419720v6

[Docket No. 753]; *In re KB Toys, Inc.*, No. 08-13269 (Bankr. D. Del. Dec. 1, 2009) (dismissing case pursuant to Sections 1112(b) and 305(a) of the Bankruptcy Code) [Docket No. 914].

**C.    <u>The Court Should Authorize the Debtors to Abandon and Destroy the Books and Records.</u>**

51.     Section 554(a) of the Bankruptcy Code provides that "[a]fter notice and a hearing, [a debtor] may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C. § 554(a). Additionally, Section 105(a) of the Bankruptcy Code provides, in pertinent part, that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." *Id.* at § 105(a). Bankruptcy Rule 6007, meanwhile, provides that a debtor may abandon property of the estate by giving notice of the proposed abandonment to various parties, and allowing those parties to file an objection. As one bankruptcy court has noted, "if a trustee feels an asset is of inconsequential value and benefit to the estate or that it is 'burdensome to the estate,' [she] may abandon it." *Reich v. Burke (In re Reich)*, 54 B.R. 995, 1003-04 (Bankr. E.D. Mich. 1985).

52.     The Debtors request that the Court, pursuant to Sections 105(a) and 554 of the Bankruptcy Code and Bankruptcy Rule 6007, authorize, but not direct, the Debtors to abandon and destroy the Books and Records. As previously discussed, the Debtors have sold substantially all of their assets through the Sale, no longer have an operating business and have largely wound up their affairs. The Books and Records will be simply of no value to the Debtors after dismissal of the Chapter 11 Cases and the proposed dissolution, and the Debtors should not be forced to incur the costs necessarily associated with maintaining and storing the Books and Records—an asset with no value.

54797/0001-14419720v6

53.     Accordingly, the Debtors submit that the relief requested herein with respect to the Books and Records is necessary, prudent and in the best interests of the Debtors' estates and creditors, and should therefore be granted.

**D.    Binding Effect of Prior Stipulations, Settlements, Rulings, Orders and Judgments.**

54.     The Debtors request that all orders of this Court entered in the Chapter 11 Cases remain in full force and effect and survive the dismissal of the Chapter 11 Cases.  Although Section 349 of the Bankruptcy Code contemplates that dismissal will typically reinstate the pre-petition state of affairs by revesting property in the debtor and vacating orders and judgments of the bankruptcy court, a bankruptcy judge may "for cause, orde[r] otherwise."  11 U.S.C. § 349 (b).  "[T]his provision appears to be designed to give courts the flexibility to 'make the appropriate order to protect rights acquired in reliance on the bankruptcy case.'"  *Jevic*, 137 S.Ct. at 984.

55.     The Debtors submit that cause exists to allow all stipulations, settlements, rulings, orders and judgments entered by the Court during these Chapter 11 Cases to be given continued effect, notwithstanding the requested dismissal.  The Debtors have been in Chapter 11 for over six (6) months and have sought and obtained this Court's approval of numerous motions including, most significantly, the Sale Motion.  Unless the Court orders otherwise, Section 349 of the Bankruptcy Code could unravel the effect of the orders entered in these cases.  By allowing the orders of this Court to remain in full force and effect and survive dismissal, the Court will preserve the benefits of all parties' efforts and achievements in the Chapter 11 Cases. It is the results obtained during the Chapter 11 Cases that now justify dismissal.

**E.    Professional Fee Issues**

56.     The Debtors request that the Court schedule a final omnibus fee hearing in August (the "Final Fee Hearing").  The Debtors further request that the Court require all professionals

21

retained in these Chapter 11 Cases to file final requests for allowance and payment of all fees and expenses incurred during the Chapter 11 Cases (the "Final Fee Applications") not later than twenty (21) days prior to the Final Fee Hearing and that any objections to the Final Fee Applications be filed and served on counsel for the Debtors and the applicable fee applicant by 4:00 p.m. (prevailing Eastern Time) seven (7) days prior to the Final Fee Hearing.

57.    To the extent any cash consideration remains unused after satisfaction of the outstanding professional fees, the Debtors shall pay such amounts to MasterBrand in accordance with the MasterBrand Stipulation.

**F.    Certification and Request for Entry of Dismissal Order**

58.    As soon as reasonably practicable following the payment of professional fees, UST fees and any excess funds to MasterBrand, the Debtors request that the Court dismiss the Chapter 11 Cases upon the filing of a certification (a "Certification") of counsel and requesting entry of a dismissal order substantially in the form attached hereto as **Exhibit B** (the "Final Dismissal Order"). The Certification will verify that (i) all quarterly fees of the UST have been paid in full, (ii) fees and expenses of the professionals in the Chapter 11 Cases have been approved on a final basis and paid, and (iii) any excess funds in the Debtors' estates have been paid to MasterBrand in accordance with the MasterBrand Stipulation.

59.    The Debtors intend to serve the Certification on the master service list established in the Chapter 11 cases, but will not send the Certification to the Debtors' entire matrix of creditors and parties-in-interest, as such parties will receive reasonable notice of the proposed dismissal through notice of the hearing on the present Motion.

## V.    NOTICE

60.    Notice of this Motion will be provided to (i) the UST; (ii) counsel to the Committee; (iii) all of the Debtors' creditors; and (iv) all other parties who have formally filed

22

requests for notice in these Chapter 11 Cases pursuant to Bankruptcy Rule 2002. The Debtors will serve notice of this Motion only, and will not serve a copy of the Motion itself on all of the Debtors' creditors. In light of the notice of the relief requested, the Debtors submit that no other or further notice is required.

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto as **Exhibit A** and grant such other and further relief as the Court deems just and proper under the circumstances, including entry of the Final Dismissal Order at the appropriate time.

Dated: June 14, 2017
      Wilmington, Delaware

**COLE SCHOTZ P.C.**

Marion M. Quirk (I.D. No. 4136)
Nicholas J. Brannick (I.D. No. 5721)
500 Delaware Avenue, Suite 1410
Wilmington, DE 19801
Telephone: (302) 652-3131
Facsimile: (302) 652-3117
mquirk@coleschotz.com
nbrannick@coleschotz.com

- and -

Michael D. Sirota
Ilana Volkov
Felice R. Yudkin
25 Main Street
Hackensack, NJ 07602-0800
Telephone: (201) 489-3000
Facsimile: (201) 489-1536

*Counsel for Debtors and
Debtors in Possession*

54797/0001-14419720v6